2019 UT App 35

# THE UTAH COURT OF APPEALS

LARRY MCCLOUD,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20170148-CA
Filed March 14, 2019

Fourth District Court, Heber Department
The Honorable Donald J. Eyre Jr.
No. 070500212

Andrew Parnes and Brent A. Gold, Attorneys
for Appellant

Sean D. Reyes and Erin Riley, Attorneys for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

APPLEBY, Judge:

¶1    Larry McCloud appeals the denial of his petition for post-conviction relief. A jury convicted McCloud of several crimes related to his sexual abuse of his daughter (Victim). On direct appeal, this court affirmed his convictions. McCloud then filed a petition for post-conviction relief, arguing that his trial attorney (Trial Counsel) provided ineffective assistance by failing to consult expert witnesses and failing to obtain all of Victim's medical records before trial. The post-conviction court determined that McCloud's claims of Trial Counsel's ineffective assistance were procedurally barred because McCloud could have raised them on direct

appeal. McCloud then amended his petition, arguing that his appellate attorney (Appellate Counsel) rendered ineffective assistance by failing to raise on appeal his claims of Trial Counsel's ineffective assistance. The post-conviction court dismissed McCloud's amended petition on the merits, concluding that Appellate Counsel's omission of the claims on appeal did not constitute constitutionally ineffective assistance of counsel.

¶2 McCloud raises two issues. First, he argues the post-conviction court erred in determining that his claims of Trial Counsel's ineffective assistance were procedurally barred. Second, he argues that Trial Counsel provided ineffective assistance by failing to consult expert witnesses and failing to obtain all of Victim's medical records before trial. We conclude that the post-conviction court erred in determining that McCloud's claims of ineffective assistance of Trial Counsel were procedurally barred. But we affirm its denial of McCloud's petition for post-conviction relief, concluding that he has not shown he received constitutionally ineffective assistance from Trial Counsel.

BACKGROUND

¶3 When Victim was five years old, McCloud forced her to shower with him and asked her to touch his penis.[1] And on multiple occasions while Victim was between the ages of seven

---

1. "Because this case comes before us after a jury verdict, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand the issues raised on appeal." *Gregg v. State*, 2012 UT 32, ¶ 2, 279 P.3d 396 (quotation simplified).

and ten, McCloud climbed into her bed, opened her legs, and penetrated her vagina with his tongue.[2]

¶4     Victim reported the abuse when she was sixteen. Based on her allegations, the State charged McCloud with one count of aggravated sexual abuse of a child—for the shower incident—and six counts of sodomy upon a child—for the subsequent incidents. Before trial, McCloud requested that Trial Counsel retain a false memory expert and a psychosexual profiling expert. But Trial Counsel did not consult any experts for the defense.

¶5     The State's case against McCloud primarily relied on Victim's testimony. At trial, she detailed the incidents of abuse for each count and, for some counts, identified specific dates on which the incidents occurred. The State did not present expert testimony.

¶6     As part of the defense, Trial Counsel presented McCloud's day planners and calendar notes as well as a "videotape taken at Christmas" to prove that McCloud and Victim were not together on some of the dates when the abuse allegedly occurred. Victim responded to this evidence by saying that, although she may have been confused about the specific dates, she was not confused about the abuse itself.

¶7     Further, Trial Counsel elicited testimony that, before reporting the abuse, Victim told her mother and various therapists and psychologists about showering with McCloud when she was young, but she did not report anything "inappropriate" until she was sixteen. On cross-examination,

---

2. McCloud and Victim's mother divorced when Victim was three years old, and Victim's mother was awarded custody. The abuse occurred during Victim's parent-time with McCloud.

Victim admitted that, despite meeting "with a number of different people," she did not tell anyone "all the details" until "September or October of 2000." She specifically mentioned meeting with a psychiatrist or psychologist in August 2000—just weeks before reporting the abuse—and said she did not reveal all "the details" then.

¶8 Trial Counsel also highlighted group therapy sessions in which Victim could have reported the abuse, and mentioned Victim's medical history, including depression, asthma, and a hospitalization resulting from suicidal feelings. He elicited testimony describing "deteriorated" relationships between McCloud and Victim and McCloud and Victim's mother, and suggested that reporting the abuse was a way for Victim to "get back at her father." In closing argument, Trial Counsel asserted that Victim was "pushed" into making false allegations by various people, including her mother.

¶9 After reviewing the evidence and arguments, the jury convicted McCloud on the count of aggravated sexual abuse of a child[3] and three of the counts of sodomy upon a child, but acquitted him of the remaining three counts of sodomy upon a child.

¶10 After trial, McCloud hired Appellate Counsel to appeal his convictions. Appellate Counsel raised various claims of ineffective assistance of counsel, but did not raise claims regarding Trial Counsel's failure to consult expert witnesses or obtain exculpatory evidence, or any other claims that would

---

3. On direct appeal, because of a statute of limitations issue, this court "direct[ed] that the conviction of aggravated sexual abuse of a child be reduced to sexual abuse of a child," a lesser included offense. *State v. McCloud*, 2005 UT App 466, ¶ 1, 126 P.3d 775.

have required an "extra-record investigation." Instead, she limited the appeal to issues that could be determined on the facts "contained in the record." She did not consider the "extra-record" claims to be without merit, but thought McCloud had "a good appeal already" and could raise "extra-record" issues in a petition for post-conviction relief. Appellate Counsel knew she could move to supplement the record on appeal under rule 23B of the Utah Rules of Appellate Procedure, but believed such a motion was "permissive and not required." *See* Utah R. App. P. 23B. And she did not think failing to file a rule 23B motion would bar McCloud's claims for post-conviction relief.

¶11 This court affirmed McCloud's convictions. *State v. McCloud*, 2005 UT App 466, ¶ 1, 126 P.3d 775, *cert. denied*, 133 P.3d 437 (Utah 2006). Following our decision, McCloud filed a petition for post-conviction relief, arguing that Trial Counsel provided ineffective assistance by failing to consult expert witnesses and failing to obtain all of Victim's medical records related to her reporting—or delay in reporting—the abuse. He asserted that experts could have assisted Trial Counsel's investigation of Victim's allegations and presented helpful testimony at trial. He also argued that obtaining all of Victim's medical records was essential because they highlighted inconsistencies in her testimony. And he claimed that, but for Trial Counsel's errors, a more favorable outcome at trial was "reasonably probable."

¶12 The State moved to dismiss the petition, arguing that McCloud's claims were procedurally barred under Utah Code section 78B-9-106(1)(c) because he could have but did not raise them on direct appeal. It asserted that, even "if claims of ineffective assistance against [Trial Counsel] required supplementation [of the record on appeal], [Appellate Counsel] could have asked the Court of Appeals to remand for an evidentiary hearing pursuant to rule 23B [of the Utah Rules of

Appellate Procedure]." Thus, all ineffective assistance claims "could have and should have been raised on direct appeal."

¶13 The State asserted that Trial Counsel's ineffectiveness could be addressed only in the context of a claim that Appellate Counsel was ineffective for failing to raise issues on appeal. That is, McCloud had to show that Appellate Counsel "omitted an issue which [was] obvious from the trial record," and "probably would have resulted in reversal." (Quotation simplified.) Essentially, the State argued McCloud was required to show both that Trial Counsel was ineffective at trial and that Appellate Counsel was ineffective for failing to raise Trial Counsel's ineffectiveness. *See Hamblin v. State*, 2015 UT App 144, ¶ 11, 352 P.3d 144 (explaining that "we must examine the merits of the claim of ineffective assistance of trial counsel to determine if appellate counsel rendered ineffective assistance" by omitting that claim (quotation simplified)).

¶14 McCloud opposed the motion to dismiss, asserting that the State's procedural bar argument "must be rejected." He said barring his claims would confuse the role of appellate counsel— who generally raises ineffectiveness claims only when the trial record is adequate to permit decision on the issue—with the role of post-conviction counsel—who generally raises ineffectiveness claims based on matters not contained in the record. McCloud acknowledged that rule 23B allows supplementation of the record upon "a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." (Quotation simplified.) But he argued that rule 23B does not require attorneys to "scrutinize their client's case for all possible extra-record claims of ineffective assistance of counsel during the direct appeal." Instead, he claimed "the permissive language of the rule" creates "a procedural means of establishing a record for" claims of which "counsel is aware."

¶15 McCloud noted that arguing Appellate Counsel's ineffectiveness would require him to show that the omitted issues were "obvious from the record." But rule 23B "provides the possibility of remand if counsel can make a nonspeculative allegation of facts not fully appearing in the record." (Quotation simplified.) Thus, if "the claim was solely 'obvious from the record,'" he argued, "there would be no need to make application under Rule 23(B)." He concluded that "it is precisely because claims of ineffective assistance of counsel are often based on matters not contained in the appellate record that [post-conviction petitions] are permitted."

¶16 After reviewing the parties' arguments, the post-conviction court concluded that McCloud's claims were procedurally barred. It noted that, "'ineffective assistance of counsel should be raised on appeal if (1) the trial record is adequate to permit decision of the issue and (2) [the] defendant is represented by counsel other than trial counsel.'" (Quoting *State v. Litherland*, 2000 UT 76, ¶ 9, 12 P.3d 92.) The court said, however, that the Utah Supreme Court has "eliminated the first part of the requirement" as a result of rule 23B and, "so long as on appeal a defendant is represented by different counsel, an ineffective assistance claim should (and certainly *could*) be raised on appeal." (Citing *Litherland*, 2000 UT 76, ¶ 17, and *Cramer v. State*, 2006 UT App 492, ¶ 9, 153 P.3d 782.) But the court allowed McCloud to amend his petition to include a claim for ineffective assistance of Appellate Counsel.

¶17 After McCloud amended his petition, the court held an evidentiary hearing to develop the record regarding Appellate Counsel's failure to argue that Trial Counsel was ineffective for not consulting experts. McCloud testified that Trial Counsel disagreed with his request to retain experts, responding that the State would simply counter with experts of its own. Instead, Trial Counsel asked for McCloud's day planners "to use the dates and information in them to prove that [Victim] lied."

According to McCloud, Trial Counsel "was confident that he could prove [Victim] was lying" by presenting a video taken at Christmas, as well as McCloud's day planners and calendar notes, even though "there were certain dates on which abuse was alleged to have occurred regarding which he had no proof [McCloud] was not with [Victim]." McCloud said that Trial Counsel thought "if several of [Victim's] representations (as to dates) were proved to be false, the rest would be called into question."

¶18    McCloud also testified regarding his appeal. He said he asked Appellate Counsel if he could raise ineffective assistance of counsel claims based on Trial Counsel's failure to consult and call experts and obtain exculpatory evidence. But Appellate Counsel said "no, . . . they could only appeal what was in the record, or what took place at trial, and that the other issues could be raised in post-conviction." Further, McCloud said that another attorney, "who had represented him briefly," also "told him that these other issues that were not raised on direct appeal could be raised in post-conviction."

¶19    Trial Counsel testified regarding his representation of McCloud. He said he had practiced criminal law for twenty-five to thirty years. In that time, he had used psychosexual profile experts and false memory experts and had sometimes consulted them before trial without calling them at trial. According to his testimony, "multiple factors" go into his decision to consult or retain experts, including "[i]nvestigation, the specific facts, the defense you're running, the type of case," and "what you believe is going to be necessary" to prevail. In McCloud's case, his strategy was to show that Victim "was making up a story and was not accurate in what she was describing." He said it was a "he-said/she-said case with what [he] believed was compelling evidence that would discredit the she-said aspect." Although he admitted that consulting experts would not have been "inconsistent with [his] strategy," he thought "that in some ways

it made [his] theory of the case less focused and more diluted." And he "made a judgment call that . . . [using experts] might cloud[] the water."

¶20 Appellate Counsel testified regarding McCloud's appeal. She described rule 23B as "a rule of appellate procedure that is designed for claims of ineffective assistance of counsel to be added to the record." She was "unclear on whether under 23B the ineffective assistance of counsel claims need to be a little bit apparent in the record or not." But at the time of the hearing, she thought "potential claims of ineffective assistance of counsel, even those outside the record, must be raised through a 23B motion on direct appeal." Accordingly, her new practice was to conduct "a thorough extra-record investigation and raise[] any meritorious issues found." She testified that, had she "believed McCloud would be barred from raising [his claims] in post-conviction, she would have conducted a thorough extra-record investigation and raised any meritorious issues found." And "[i]f she were to do it over again, [she] would investigate everything that [McCloud] told her that had a reasonable chance of succeeding on a claim of ineffective assistance."

¶21 A child memory expert reviewed the records of McCloud's case and testified regarding how he could have assisted the defense. He detailed various concepts that would have been helpful, including "contextual embedding," "script memory," "episodic memories," "autobiographical memory," and "the shape of memories across time." He said consulting an expert in McCloud's case was important because "the allegations arose in an atmosphere of distrust and hostility between the two homes of the parents, where there were suspicions of fears and allegations of maltreatment going back" a number of years. He described "triggering circumstances" surrounding Victim reporting the abuse, which should have been investigated as potential evidence of "motives to disclose and/or manufacture an allegation for some secondary gain." As examples of such

circumstances, he mentioned Victim's mental state—she would malinger, or feign illness so as not to go to school—and the fact that Victim was "medically noncompliant" and "questionably cooperative in her own case." He also identified "very strong chronic stereotyping" of McCloud and repeated questioning of Victim about potential abuse, which can "confuse the child and increase the risk that the child will acquiesce and tell the questioner what he or she thinks that person wants to hear, or increase the risk that the child will be socialized into manipulating others by saying inaccurate things." And he said "the interviews of [Victim] were not scientifically sound." For example, they "seemed to presume that the events had occurred" and included statements "telling [Victim] she did not do anything wrong and that it was not her fault," which "are value judgments that should not be made in the interview process."

¶22   A psychosexual profiling expert testified. He assists defendants by providing "sexual risk assessments," which compare "the individual assessed against normative samples of what is known to correlate with sexual deviance and/or increased propensity to commit a sexual crime." He prepared to testify by reviewing a "psychosexual evaluation" of McCloud that was done for purposes of sentencing and then conducting a "mental status and clinical interview with McCloud in order to assess whether his behavior was commensurate with the previous reports." The expert reported that McCloud "does not demonstrate characteristics that are commensurate with someone who has engaged in sexually deviant behavior, . . . or who has any type of personality disorder that would increase the risk to have engaged in that behavior or to engage in it in the future."

¶23   To develop the record regarding Trial Counsel's failure to obtain Victim's medical records, McCloud sought to subpoena records of Victim's treatment with medical and psychiatric care

providers. The court issued the subpoenas and, after in-camera review of the records, provided one relevant document to the parties. That document is a discharge summary of a meeting between Victim and a doctor that occurred on August 23, 2000—two weeks before Victim reported the abuse. It provides:

> [Victim] has been having flashbacks and nightmares about previous sexual abuse by her biological father that occurred between the ages of 6 and 8. At that time it was discovered that he had been having [Victim] shower with him, and was washing her in the shower. He also insisted on sleeping with [Victim]. [Victim] does not remember him being inappropriate sexually in other ways, and it is unclear whether this was actually a case of molestation or a father with extreme boundary problems. The mother did call the Division of Family Services at the time, but no charges were filed.

¶24    After reviewing the evidence and considering the parties' arguments, the post-conviction court denied McCloud's petition, concluding that Appellate Counsel did not provide ineffective assistance by failing to bring his claims on appeal. In its ruling, the court noted that McCloud's claims "by their nature are not likely to be *obvious from the record*," which is "the well-established standard" of ineffective assistance for omitting issues on appeal. But it then mentioned rule 23B and expressed confusion regarding the corresponding responsibility of "appellate counsel to investigate beyond the record for claims *not fully appearing in the record*."

¶25    The court first addressed Appellate Counsel's omission of the expert witness claim. Here, the court did not determine whether Appellate Counsel's failure to investigate the claim constituted deficient performance. Instead, it disposed of the

issue by determining that any error did not prejudice McCloud's appeal because there was "no evidence that the appellate court would have granted" a rule 23B motion based on Trial Counsel's failure to consult expert witnesses. Specifically, the court determined that Trial Counsel "did not perform deficiently—he made a strategic decision to focus limited time on theories that he believed to be likely of success." And because McCloud could not show that Trial Counsel performed deficiently, his claim of ineffective assistance of Appellate Counsel failed for lack of prejudice.

¶26 The court then addressed Appellate Counsel's omission of the claim of Trial Counsel's failure to obtain all of Victim's medical records. Here, the court determined that Appellate Counsel's failure to supplement the record amounted to deficient performance. The court said, "The State does not address how [rule 23B's] language may affect the well-established standard that the claims must be obvious from the trial record," but "the Court . . . finds that [Appellate Counsel] performed deficiently by failing to investigate this claim in a Rule 23B motion."

¶27 Ultimately, however, the court determined that Appellate Counsel's error did not prejudice McCloud because, on appeal, a claim that Trial Counsel was ineffective by failing to obtain all of Victim's medical records would not have resulted in reversal. In its analysis, the court first determined that Trial Counsel's failure to obtain Victim's medical records constituted deficient performance because it was a breach of the duty to investigate "the underlying facts of the case." But it concluded that Trial Counsel's investigation would have produced only the one relevant medical record and having that record would not have created "a reasonable likelihood of a more favorable outcome [at trial]." (Quotation simplified.)

¶28    The court explained, "[E]ven though [Trial Counsel] may not have had the subject record, he apparently knew of its contents and used that information in his questioning and in his argument." Victim's testimony was "consistent with the newly disclosed report" and Trial Counsel "appropriately questioned [Victim] concerning her inconsistency and delay in reporting." Thus, Trial Counsel's "deficient performance did not prejudice [McCloud]." And because Trial Counsel's actions did not prejudice McCloud's trial, Appellate Counsel's "deficiency therefore could not have prejudiced" the appeal.

¶29    After rejecting McCloud's claims, the post-conviction court denied McCloud's petition and dismissed the case. McCloud appeals.

ISSUES AND STANDARDS OF REVIEW

¶30    McCloud raises two issues on appeal. First, he argues the post-conviction court erred in determining that his claims of Trial Counsel's ineffective assistance were procedurally barred under section 78B-9-106(1)(c) of the Post-Conviction Remedies Act (the PCRA).[4] Interpretation of the PCRA is a question of law,

---

4. The State argues this claim was not properly preserved for appellate review. We disagree. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *Winward v. State*, 2012 UT 85, ¶ 9, 293 P.3d 259 (quotation simplified). After McCloud filed his post-conviction petition, the State filed a motion to dismiss, arguing that claims of Trial Counsel's ineffectiveness were procedurally barred. McCloud opposed the State's motion, arguing that the procedural bar should not apply in his case. And the post-conviction court ultimately ruled on the

(continued…)

which we review for correctness without deference to a lower court's conclusions. *Manning v. State*, 2004 UT App 87, ¶ 8, 89 P.3d 196, *aff'd on other grounds*, 2005 UT 61, 122 P.3d 628.

¶31 Second, McCloud argues the court erred in determining that Trial Counsel did not provide him with constitutionally ineffective assistance of counsel. "When confronted with ineffective assistance of counsel claims, we review a lower court's purely factual findings for clear error, but we review the application of the law to the facts for correctness." *State v. Momoh*, 2018 UT App 180, ¶ 8 (quotation simplified); *see also Landry v. State*, 2016 UT App 164, ¶ 22, 380 P.3d 25 ("In reviewing a ruling on a petition for postconviction relief, we review the district court's findings of fact for clear error and its conclusions of law for correctness.").

ANALYSIS

I. Procedural Bar

¶32 We first address whether McCloud's claims of Trial Counsel's ineffectiveness are procedurally barred under Utah Code section 78B-9-106(1)(c). This case concerns the duty of appellate attorneys to investigate claims of ineffective assistance of counsel that depend on facts outside the trial record. McCloud argues that we "must establish clear guidelines" regarding that duty. We also note that the post-conviction court's ruling and Appellate Counsel's testimony expressed confusion on this issue, and we think a thorough analysis will be helpful in future cases. As explained below, we conclude that in a category of

---

(…continued)
issue. Accordingly, we conclude that this claim was preserved below and is properly before us on appeal.

cases—including this case—a petitioner may bring ineffective assistance of counsel claims in a petition for post-conviction relief even when they technically could have been raised on direct appeal.[5]

¶33 The PCRA "establishes the sole remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies including direct appeal." Utah Code Ann. § 78B-9-102(1)(a) (LexisNexis Supp. 2018). Under the PCRA, a post-conviction petitioner may file an action to vacate or modify his conviction based on ineffective assistance of counsel. *Id.* § 78B-9-104(1)(d).

---

5. McCloud asks us to "address appellate counsel's responsibility to root out instances of trial counsel ineffectiveness" and potentially move for remand under rule 23B. We note the need for guidance on this issue. For example, in her testimony, Appellate Counsel said she now "believes that potential claims of ineffective assistance of counsel, even those outside the record, must be raised through a 23B motion" to avoid a procedural bar at the post-conviction stage. Her current practice is to "conduct a thorough extra-record investigation and raise any meritorious issues found." We think that, in many cases, such a thorough extra-record investigation may go beyond what is required of "objectively reasonable" appellate counsel. *See Ross v. State*, 2012 UT 93, ¶ 44, 293 P.3d 345 (explaining that a petitioner claiming ineffective assistance of appellate counsel must "show that his counsel was objectively unreasonable in failing to find arguable issues to appeal"). But Appellate Counsel's testimony highlights that a strict interpretation of Utah Code section 78B-9-106(1)(c) would encourage—even compel—a reasonable attorney to conduct such an investigation to avoid barring claims on post-conviction.

¶34 But "[p]ost-conviction relief is a collateral attack on a conviction or sentence; it is not a substitute for appellate review." *Taylor v. State*, 2007 UT 12, ¶ 14, 156 P.3d 739. Accordingly, the PCRA generally bars claims that could have been but were not raised on direct appeal. Utah Code Ann. § 78B-9-106(1)(c).

¶35 "A defendant 'could have' raised a claim when he or his counsel [was] aware of the essential factual basis for asserting it." *Gordon v. State*, 2016 UT App 190, ¶ 29, 382 P.3d 1063 (quotation simplified). "Thus, the general rule is that the procedural bar applies to claims known to a defendant or his counsel" at the time of the defendant's appeal. *Pinder v. State*, 2015 UT 56, ¶ 44, 367 P.3d 968.

¶36 Traditionally, "the general procedural rules applicable to most issues raised on direct appeal did not always pertain to claims of trial counsel's ineffectiveness." *State v. Litherland*, 2000 UT 76, ¶ 12, 12 P.3d 92. Prior to the enactment of rule 23B of the Utah Rules of Appellate Procedure, claims regarding trial counsel's "investigation and preparation of a case" were not barred on post-conviction because the trial record was insufficient to allow those claims to be "dealt with on direct appeal." *Hurst v. Cook*, 777 P.2d 1029, 1036 n.6 (Utah 1989), *superseded by statute as stated in Pinder v. State*, 2015 UT 56, 367 P.3d 968.

¶37 "On appeal, it is the defendant's obligation to provide supporting arguments by citation to the record. If an appellant fails to provide an adequate record on appeal, [the appellate court] must assume the regularity of the proceedings below." *Litherland*, 2000 UT 76, ¶ 11 (quotation simplified). "Consequently, a defendant cannot bring an ineffective assistance of counsel claim on appeal without pointing to specific instances in the record demonstrating both counsel's

deficient performance and the prejudice it caused." *State v. Griffin*, 2015 UT 18, ¶ 16.

¶38 But "counsel's ineffectiveness may have caused, exacerbated, or contributed to the record deficiencies, thus presenting the defendant with a catch-22 unique to claims of ineffectiveness of trial counsel." *Litherland*, 2000 UT 76, ¶ 12. And because "the record [was] silent regarding counsel's conduct," *Griffin*, 2015 UT 18, ¶ 16, "the dilemma of an inadequate record created a regime that tended to channel ineffectiveness claims into the [post-conviction] arena," *Litherland*, 2000 UT 76, ¶ 13.

¶39 Rule 23B, however, provides "a ready procedural mechanism" that was "specifically designed to address the inadequate record dilemma." *Id.* ¶ 14. Under rule 23B, "'[a] party to an appeal in a criminal case may move the court to remand the case to the trial court for entry of findings of fact[] necessary for the appellate court's determination of a claim of ineffective assistance of counsel.'" *Id.* (quoting Utah R. App. P. 23B(a)). "The motion [is] available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." Utah R. App. P. 23B(a).

¶40 The Utah Supreme Court has described the effect of rule 23B as follows: "where, on direct appeal, [a] defendant raises a claim that trial counsel was ineffective (and assuming [the] defendant is represented by different counsel than at trial), [the] defendant bears the burden of assuring the record is adequate." *Litherland*, 2000 UT 76, ¶ 16. And "[i]f a defendant is aware of any 'nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective,' [the] defendant bears the primary obligation and burden of moving for a temporary remand." *Id.* (quoting Utah R. App. P. 23B).

Essentially, "defendants are no longer presented with the catch-22" of an inadequate record and "ineffectiveness claims may be treated in the same manner as other issues on direct appeal." *Id.* ¶¶ 16–17.

¶41    Thus, appellate attorneys have a duty to investigate potential ineffective assistance claims that are based on facts outside the record. *See id.* ¶ 16. And if an ineffective assistance of counsel claim could have been raised in a rule 23B motion, the general rule is that it will be barred on post-conviction. *See Todd v. State*, 2016 UT App 232, ¶ 8, 391 P.3d 261 (per curiam) (barring ineffective assistance claims when the petitioner "failed to demonstrate any new evidence that was not known to him at the time he filed his direct appeal").

¶42    The general rule has various exceptions. For example, "a petitioner is not procedurally barred from raising claims of ineffective assistance of counsel if the same counsel represented the petitioner at trial and on direct appeal." *Johnson v. State*, 2011 UT 59, ¶ 11, 267 P.3d 880; *see also Berrett v. State*, 2018 UT App 55, ¶ 25, 420 P.3d 140 (explaining that "it is unreasonable to expect an attorney to raise the issue of his own incompetence" (quotation simplified)). Further, claims that "could and should have been raised on direct appeal" may be raised in a petition for post-conviction relief if there are "unusual circumstances justifying [the petitioner's] failure to do so." *Carter v. Galetka*, 2001 UT 96, ¶ 14, 44 P.3d 626. "Under the unusual circumstances test, we will address claims that are procedurally barred if the petitioner can show 'that there was an obvious injustice or a substantial and prejudicial denial of a constitutional right.'" *Taylor v. State*, 2007 UT 12, ¶ 122, 156 P.3d 739 (quoting *Carter*, 2001 UT 96, ¶ 15); *see also id.* ¶ 14 ("[O]n an appeal from a post-conviction order, this court will only address the merits of claims that could not have been raised prior to the post-conviction proceeding below or claims that, due to the gravity of a death

sentence, need to be addressed to ensure that substantial justice is done." (quotation simplified)).[6]

¶43 But outside these exceptions, the procedural bar has been strictly applied. *See, e.g.*, *Lafferty v. State*, 2007 UT 73, ¶¶ 45, 52, 175 P.3d 530; *Lynch v. State*, 2017 UT App 86, ¶ 44, 400 P.3d 1047; *Hamblin v. State*, 2015 UT App 144, ¶ 10, 352 P.3d 144. And generally, "a claim that could have been brought on direct appeal may not be reviewed unless the defendant's failure to bring the claim was the result of ineffective assistance of [appellate] counsel." *Lafferty*, 2007 UT 73, ¶ 44; *see also* Utah Code Ann. § 78B-9-106(3) (establishing that "a person may be eligible for relief on a basis that the ground could have been but was not raised at trial or on appeal, if the failure to raise that ground was due to ineffective assistance of counsel"); *Ross v. State*, 2012 UT 93, ¶ 52, 293 P.3d 345 ("[T]he appellate counsel claim is the gateway to the otherwise procedurally barred trial counsel claim.").

¶44 "The standard for evaluating whether appellate counsel is ineffective is the same *Strickland* standard used to determine whether trial counsel is ineffective." *Kell v. State*, 2008 UT 62, ¶ 42, 194 P.3d 913 (referring to *Strickland v. Washington*, 466 U.S. 688 (1984)). To prevail, "a petitioner must prove that appellate counsel's representation fell below an objective standard of reasonable conduct and that the deficient performance prejudiced him." *Lafferty*, 2007 UT 73, ¶ 39 (quotation simplified).

---

6. We note that "it is unclear whether the common law unusual circumstances exception still exists after the 2008 amendments to the [PCRA]." *State v. Griffin*, 2016 UT 33, ¶ 21, 384 P.3d 186. But because McCloud filed his petition in 2007, "the common law exceptions to the procedural bar are still applicable in this case." *See Taylor v. State*, 2012 UT 5, ¶ 11 n.3, 270 P.3d 471.

¶45 But the Constitution does not require appellate attorneys "to raise every nonfrivolous issue on appeal." *Id.* ¶ 49 (quotation simplified). Instead, they may "winnow out weaker claims in order to focus effectively on those more likely to prevail." *Id.* (quotation simplified). Thus, when a claim of ineffective assistance of counsel is based on the failure to raise a claim on appeal, the petitioner "must show that the issue was *obvious from the trial record* and probably would have resulted in reversal." *Id.* ¶ 39 (emphasis added) (quotation simplified); *see also Gregg v. State*, 2012 UT 32, ¶ 46, 279 P.3d 396 (determining appellate counsel rendered ineffective assistance when "the record clearly indicated that trial counsel failed to present key facts at trial that would have likely had an effect on the trial's outcome").

¶46 In this case, a strict interpretation of our precedent would strip McCloud of a remedy. First, under rule 23B, McCloud "could have" raised claims of ineffective assistance of Trial Counsel for failing to consult and call experts at trial and failing to obtain all of Victim's medical records. Both McCloud and Appellate Counsel were aware of these potential claims and the essential factual basis for asserting them. S*ee Pinder*, 2015 UT 56, ¶ 44. But Appellate Counsel did not file a rule 23B motion because the claims were based on facts "outside the record" and McCloud had "what she believed was a good appeal already."

¶47 Further, we cannot say Appellate Counsel's failure to raise those claims on appeal constituted ineffective assistance because they were not "obvious from the trial record." *See Gregg*, 2012 UT 32, ¶ 44 (quotation simplified); *see also*, *id.* ¶ 45 (explaining that, "while appellate counsel is not obligated to raise every nonfrivolous issue . . . this does not excuse appellate counsel from ignoring obvious errors that would have influenced the trial's outcome"). It was obvious from the record that Trial Counsel did not present expert testimony as part of the defense, but the record did not reveal the reasons—or lack thereof—supporting that decision. Nor did the record suggest

that "the only reasonable and available defense strategy require[d] consultation with experts or introduction of expert evidence." *Harrington v. Richter*, 562 U.S. 86, 106 (2011).

¶48 On the contrary, based on the record, it would have been reasonable for Appellate Counsel to conclude that Trial Counsel made a reasonable, strategic decision. *See id*. at 108–09 (explaining that "a competent attorney" could determine expert testimony "might be harmful to the defense," "shift attention to esoteric matters of forensic science, distract the jury from whether [the defendant] was telling the truth, or transform the case into a battle of the experts"); *see also State v. Hales*, 2007 UT 14, ¶ 80, 152 P.3d 321 (determining counsel was ineffective for not hiring an expert to rebut the State's expert only because "the centrality of [the expert's] medical evidence to the jury's determination of [the defendant's] guilt or innocence made an expert necessary"); *State v. King*, 2017 UT App 43, ¶ 24, 392 P.3d 997 (determining after a rule 23B remand that the "election to forgo expert testimony was sound trial strategy when trial counsel reasonably determined that the testimony was likely to be more harmful than helpful").

¶49 Similarly, nothing in the trial record suggested to Appellate Counsel that Trial Counsel failed to obtain all of Victim's medical records prior to trial. In fact, Trial Counsel referenced Victim's medical history at trial; he mentioned Victim meeting with psychologists and psychiatrists, he referenced her individual and group therapy sessions, he questioned her regarding her physical health including past depression and asthma, and he cited Victim's hospitalization as a result of her feeling suicidal. Because the record did not contain "red flags . . . that should have sparked some [extra-record] investigation by [A]ppellate [C]ounsel," the choice not to investigate these claims and raise them in a rule 23B motion did not constitute ineffective assistance. *See Ross,* 2012 UT 93, ¶ 51.

¶50   Thus, because McCloud technically "could have" raised these claims on appeal by moving to supplement the record under rule 23B, our precedent dictates that they should be barred, and he may only raise claims of Appellate Counsel's ineffectiveness for failing to raise them on appeal. *See Litherland*, 2000 UT 76, ¶¶ 16, 17. But our precedent also establishes that Appellate Counsel was not ineffective for omitting McCloud's claims because they were not "obvious from the trial record." *Gregg*, 2012 UT 32, ¶ 44 (quotation simplified). A strict interpretation of Utah Code section 78B-9-106(c) therefore would foreclose any potential remedy for McCloud's claims. We think such a result would not only be "an obvious injustice," *see Taylor*, 2007 UT 12, ¶ 122 (quotation simplified), but, as McCloud argues, it would place an undue burden on appellate attorneys "to root out instances of trial counsel ineffectiveness" to avoid a procedural bar on post-conviction.

¶51   Accordingly, we conclude that in some cases—highlighted by the facts of this case—a post-conviction petitioner may bring ineffective assistance of trial counsel claims even when they technically could have been raised on direct appeal. Specifically, claims that could have been raised in a rule 23B motion will not be barred on post-conviction when, as here, the record on appeal did not indicate a reasonable probability that developing those claims would have resulted in reversal. In such cases, because the record would not lead a reasonable, competent attorney to develop the claims on appeal, a petitioner may pursue them in a petition for post-conviction relief. We therefore agree with McCloud that the post-conviction court erred in determining that his claims of Trial Counsel's ineffectiveness were procedurally barred.

## II. Ineffective Assistance of Trial Counsel

¶52   Having determined that McCloud's claims of Trial Counsel's ineffectiveness are not procedurally barred, we

proceed to address those claims. McCloud argues Trial Counsel was ineffective for (1) deciding not to consult experts for the defense, and (2) failing to obtain all of Victim's medical records. We reject both arguments. As explained below, we conclude that Trial Counsel's decision against using experts did not constitute deficient performance, and McCloud was not prejudiced by Trial Counsel's failure to obtain all of Victim's medical records.

¶53 The United States Constitution guarantees "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quotation simplified). "To warrant reversal of a conviction, a [petitioner] alleging ineffective assistance of counsel must establish both 'that counsel's performance was deficient' and that 'the deficient performance prejudiced the defense.'" *Kell v. State*, 2008 UT 62, ¶ 27, 194 P.3d 913 (quoting *Strickland*, 466 U.S. at 687). "Because both deficient performance and resulting prejudice are requisite elements of an ineffective assistance of counsel claim, a failure to prove either element defeats the claim." *State v. King*, 2017 UT App 43, ¶ 16, 392 P.3d 997 (quotation simplified).

A.    Expert Witnesses

¶54 McCloud argues that Trial Counsel was ineffective for "failing to consult with and use experts" as part of the defense. We disagree. Trial Counsel's decision was objectively reasonable and therefore did not constitute deficient performance.

¶55 "To establish that counsel was deficient, a petitioner must overcome the strong presumption that counsel rendered constitutionally sufficient assistance, by showing that counsel's conduct fell below an objective standard of reasonableness under prevailing professional norms." *Burke v. State*, 2015 UT App 1, ¶ 18, 342 P.3d 299 (quotation simplified). "Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or

approach." *Harrington v. Richter*, 562 U.S. 86, 106 (2011) (quotation simplified).

¶56    "Counsel's decision to call or not to call an expert witness is a matter of trial strategy, which will not be questioned and viewed as ineffective unless there is no reasonable basis for that decision." *State v. Walker*, 2010 UT App 157, ¶ 14, 235 P.3d 766 (quotation simplified). But even strategic decisions require an adequate investigation of "the underlying facts of the case." *State v. Hales*, 2007 UT 14, ¶ 69, 152 P.3d 321 (quotation simplified).

¶57    "The specific facts of a case may require trial counsel to investigate potential [expert] witnesses to determine whether such testimony would be appropriate." *Landry v. State*, 2016 UT App 164, ¶ 32, 380 P.3d 25. An investigation also may reveal that "expert evidence is critical to the [State's] case," requiring counsel "to make a diligent investigation of the forensic evidence and its potential weaknesses and garner the expertise necessary to" adequately represent the client. *Id.* Essentially, investigation "sets the foundation for counsel's strategic decisions about how to build the best defense." *Hales*, 2007 UT 14, ¶ 69.

¶58    But counsel is not required "to fully investigate every potential lead. Rather, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *King*, 2017 UT App 43, ¶ 26 (quotation simplified). "Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support limitations on investigation." *Id.*

¶59    Here, Trial Counsel decided against consulting experts in preparation for trial. Thus, we must determine "whether that decision could not have been considered sound trial strategy at the time it was made." *Id.* ¶ 17 (quotation simplified). If there were "plausible tactical reasons" for Trial Counsel's decision,

McCloud's claim fails. *Zaragoza v. State*, 2017 UT App 215, ¶ 31, 407 P.3d 1122.

¶60 McCloud asserts "there was absolutely no risk to hiring experts, at least for consultation purposes, and there were numerous reasons to consult them." He claims "the record is undisputed" that Trial Counsel's decision was based solely on a "gut feeling," and argues that "experience alone" cannot excuse an attorney from his duty to investigate.

¶61 McCloud's argument misrepresents Trial Counsel's actions. After reviewing the record, we conclude that Trial Counsel conducted an adequate investigation of the case and made a reasonable decision that consulting experts was unnecessary. *See King*, 2017 UT App 43, ¶ 26.

¶62 We agree that some of the experts' insight was likely relevant, and potentially helpful, to McCloud's case. *See, e.g.*, *State v. Martin*, 2017 UT 63, ¶ 30, 423 P.3d 1254 (determining expert testimony "about why child victims make inconsistent disclosures would be helpful" in a case of alleged sexual abuse of a child); *State v. Miller*, 709 P.2d 350, 353 (Utah 1985) (determining the same concerning expert testimony of the "incongruity of [the defendant's] personality traits with those of individuals capable of and likely to commit sexual offenses against children"); *Washington v. Schriver*, 255 F.3d 45, 57 (2d Cir. 2001) (noting that "[a]n emerging consensus in the case law relies on scientific studies to conclude that suggestibility and improper interviewing techniques are serious issues with child witnesses" (citing cases)). Indeed, a reasonable attorney may well have concluded that consulting them as part of the defense was the best option.

¶63 But Trial Counsel's testimony from the evidentiary hearing highlights that it also was reasonable to believe consulting them "would be fruitless" or even "harmful to the

defense." *Harrington*, 562 U.S. at 108. And although Trial Counsel's experience guided his decision, we disagree with McCloud that he relied solely on a "gut feeling." Trial Counsel had practiced criminal law for twenty-five to thirty years. In that time, he had used psychosexual profile experts and false memory experts and sometimes had consulted them before trial without calling them at trial. Trial Counsel testified that "multiple factors" go into his decision to consult or retain experts, including "[i]nvestigation, the specific facts, the defense you're running, the type of case," and "what you believe is going to be necessary" to prevail.

¶64 The record shows that, based on various legitimate considerations, Trial Counsel made a reasonable "judgment call" against consulting experts in McCloud's case. *See State v. Franco*, 2012 UT App 200, ¶ 8, 283 P.3d 1004 (explaining that "[t]he concept of effective assistance must . . . contemplate the primacy of counsel's judgment, based on education, training, and experience"). First, Trial Counsel thought involving experts "might cloud[] the water" of the defense. That is, he believed experts would make his theory of the case "less focused and more diluted." This was a reasonable concern. The United States Supreme Court has noted that expert testimony may "shift attention to esoteric matters of forensic science, distract the jury from whether [the defendant is] telling the truth, or transform the case into a battle of the experts." *Harrington*, 562 U.S. at 108–09.

¶65 Here, for example, the false memory expert mentioned various concepts he believed were relevant to McCloud's case, including "contextual embedding," "script memory," "episodic memories," "autobiographical memory," and "the shape of memories across time." And the psychosexual profiling expert said that he compares "the individual assessed against normative samples of what is known to correlate with sexual deviance and/or increased propensity to commit a sexual crime."

Trial Counsel's defense theory was that a "young girl was making up a story and was not accurate in what she was describing." At the evidentiary hearing, he said "the more specific you can be in defending your case, the greater the likelihood of success, as opposed to a shotgun approach, hoping the jury will buy one of the things you throw out." He considered McCloud's case a "he-said/she-said case with what [he] believed was compelling evidence that would discredit the she-said aspect." It was reasonable to conclude that focusing on complex psychological concepts would have been more harmful than helpful because of their potential to confuse the jury or simply distract from stronger aspects of the defense. *See King*, 2017 UT App 43, ¶ 24 (determining that "trial counsel's election to forgo expert testimony was sound trial strategy when trial counsel reasonably determined that the testimony was likely to be more harmful than helpful to the defense").

¶66　Presenting expert testimony also "would have increased the likelihood of the prosecution's producing its own" expert testimony, further distracting the jury from evidence that Trial Counsel believed was stronger and more specific. *See Harrington*, 562 U.S. at 108. And there was reason to believe that rebuttal experts could have presented strong evidence to support Victim's story. *See State v. Bair*, 2012 UT App 106, ¶ 47, 275 P.3d 1050 (noting that "testimony that abuse victims often delay reporting reflects a fact already recognized by Utah Courts—that delayed discovery and reporting are common in child sexual abuse cases" (quotation simplified)). Such evidence could have made "the jurors more likely to convict." *King*, 2017 UT App 43, ¶ 24 (quotation simplified). Thus, although the experts' insight might possibly have been useful to McCloud's defense, it was reasonable for Trial Counsel to "avoid activities that appear[ed] distractive from more important duties" and spend his time and resources preparing what he believed was a better strategy.

*Lynch v. State*, 2017 UT App 86, ¶ 66, 400 P.3d 1047 (quotation simplified).

¶67 We note there may have been more of a need to consult experts if the State planned to present expert testimony of its own. When expert testimony is a critical part of the State's case, a defense attorney may need to retain a rebuttal expert or at least "make a diligent investigation of the forensic evidence and its potential weaknesses and garner the expertise necessary to cross examine the expert." *Landry*, 2016 UT App 164, ¶ 32 (quotation simplified); *see also Gersten v. Senkowski*, 426 F.3d 588, 612 (2d Cir. 2005) (determining trial counsel was deficient for failing "to consult or call an expert on the psychology of child sexual abuse, or to educate himself sufficiently on the scientific issues" when such an expert was "the key prosecution witness"). But when experts are not central to the State's case, such a "diligent investigation" is less likely necessary. *Landry*, 2016 UT App 164, ¶ 32. Here, the State did not present expert testimony and there was no reason for Trial Counsel to think it would. *See Hales*, 2007 UT 14, ¶ 74 (highlighting that "[t]he State's presentation of its case at the preliminary hearing put [the defendant's] trial attorneys on notice that [expert testimony] was critical to the State's case").

¶68 Further, Trial Counsel had worked with these specific types of experts in the past. It was reasonable to rely on previous consultations to determine whether, given the specifics of McCloud's case, a more in-depth investigation was necessary. *See King*, 2017 UT App 43, ¶ 28 (determining trial counsel was not "required to consult an expert to make a reasonable determination regarding trial strategy" "in light of [her] familiarity with [the relevant] issues and her previous consultations"). Even when the State presents expert testimony of its own, cross-examination conducted by an attorney with sufficient independent knowledge of the issues will frequently "be sufficient to expose defects in the expert's presentation."

*Harrington*, 562 U.S. at 111; *see also Landry*, 2016 UT App 164, ¶ 34 (determining that, when counsel had "never before worked on an arson case," her "prior experience did not independently provide her with the knowledge necessary to cast doubt on the State's case through effective cross-examination"). Given Trial Counsel's familiarity with the issues these experts consider, there is no reason to think he "missed the opportunity to understand . . . problems with the State's case and highlight them for the jury." *Landry*, 2016 UT App 164, ¶ 37.

¶69  McCloud's case depended on Trial Counsel's ability to bolster his credibility and undermine Victim's version of the story. Under the circumstances, it was entirely reasonable for Trial Counsel, an experienced defense attorney, to believe he could achieve that goal without the assistance of experts. *See State v. Walker*, 2010 UT App 157, ¶¶ 14, 16, 235 P.3d 766 (determining that an expert was "not critical" to explain how post-traumatic stress disorder "impacted [the defendant's] actions" because defense counsel was able to address the issue through examination of witnesses).

¶70  Indeed, a review of Trial Counsel's strategy and "overall performance indicates active and capable advocacy." *Harrington*, 562 U.S. at 111. For example, Trial Counsel attempted to discredit Victim's allegations by using McCloud's calendars and calendar notes as well as a "video taken at Christmas," which showed that McCloud and Victim were not together on certain dates the abuse allegedly occurred. McCloud argues this strategy was unreasonable because McCloud "did not have a 'complete' alibi." That is, there were a number of counts where it was undisputed that McCloud and Victim were together. But Trial Counsel considered this potential downside and concluded "that if several of [Victim's] representations (as to dates) were proved to be false, the rest would be called into question." He also noted that an expert-based defense would have had the same weakness. As he testified, although experts may have been able

to "raise questions about [Victim's] testimony," they "would not have been able to show conclusively" that the events did not occur on certain days.

¶71 Further, Trial Counsel effectively cross-examined the State's witnesses, including Victim, highlighting inconsistencies in her testimony and the fact that, despite speaking with various doctors about McCloud's behavior, she delayed reporting the abuse for a number of years. He also elicited testimony of "deteriorated" relationships between McCloud and Victim and between McCloud and Victim's mother, and suggested that reporting sexual abuse was a way for Victim to "get back at her father." And in his arguments to the jury, he asserted that Victim was "pushed" into making false allegations by various people, including her mother.

¶72 By not consulting experts, Trial Counsel did not forgo "the opportunity to pursue a more effective strategy, instead pursuing theories that were much weaker." *Landry*, 2016 UT App 164, ¶ 38. Indeed, the record shows that Trial Counsel investigated the facts of the case and developed a reasonable trial strategy based on that investigation. *See Archuleta v. Galetka*, 2011 UT 73, ¶ 140, 267 P.3d 232 ("So long as trial strategy decisions are based on thorough investigation of the law and the facts relevant to plausible options, they are virtually unchallengeable." (quotation simplified)). In Trial Counsel's words, he made a "judgment call" that McCloud's case was "solid enough" and that involving experts would "cloud[] the water." Thus, even if McCloud's "proposed approach to his defense might actually have amounted to a better strategy than the one [Trial Counsel] chose," Trial Counsel was not ineffective because there was a "conceivable tactical basis for [his] actions." *State v. Wright*, 2013 UT App 142, ¶ 20, 304 P.3d 887.

¶73 In sum, we conclude Trial Counsel fulfilled his duty to investigate the facts of the case; and based on that investigation,

made "a reasonable decision" that consulting experts was unnecessary. *See Strickland*, 466 U.S. at 691. Thus, Trial Counsel's decision was objectively reasonable and did not constitute deficient performance. McCloud's claim of ineffective assistance consequently fails.

B.     Medical Records

¶74     McCloud argues that Trial Counsel provided ineffective assistance by failing to obtain all of Victim's medical records. We reject this claim because McCloud has failed to show prejudice. *See State v. Beckering*, 2015 UT App 53, ¶ 29, 346 P.3d 672 ("In the event it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we will do so without analyzing whether counsel's performance was professionally unreasonable." (quotation simplified)).

¶75     To show prejudice, "the [petitioner] bears the burden of proving that counsel's errors actually had an adverse effect on the defense and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082 (quotation simplified). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation simplified).

¶76     After in-camera review of Victim's medical records, the post-conviction court provided the parties one paragraph of a discharge summary of a meeting between Victim and a doctor on August 23, 2000. McCloud claims this document "provides significant evidence that just two weeks before her statements to law enforcement, [Victim] was denying that she had been abused." On the contrary, the document says that Victim "has been having flashbacks and nightmares about previous sexual abuse by her biological father that occurred between the ages of 6 and 8" and notes McCloud showering with Victim and

insisting on sleeping with her. Indeed, the document seems to be affirmative evidence of abuse. And, if presented at trial, it could have been harmful to McCloud.

¶77    Granted, presenting the document at trial could have discredited Victim by highlighting her delay in reporting the abuse and the fact that she did not reveal "all of the details" until shortly before going to the police. That is, the document states that Victim "does not remember [McCloud] being inappropriate in other ways, and it is unclear whether this was actually a case of molestation or a father with extreme boundary problems."

¶78    But this evidence merely would have been cumulative of what was presented to the jury. *See State v. King*, 2012 UT App 203, ¶ 34, 283 P.3d 980 (determining counsel's failure to seek discovery of mental health records was not prejudicial when the "information [was] merely cumulative of the evidence presented to the jury"). On cross-examination, Victim testified that, despite meeting "with a number of different people," she did not tell anyone "all the details" until "September or October of 2000." And she specifically mentioned meeting with a psychiatrist in August 2000—referencing the meeting from the relevant document—and said she did not reveal all "the details" at that time. The jury heard her say that, in August 2000, she revealed only that McCloud "made [her] shower with him," and that a therapist she had been seeing "knew a little bit more about the touching and stuff like that, but as far as the oral stuff, nobody knew."

¶79    As the post-conviction court noted in its ruling, "even though [Trial Counsel] may not have had the subject record, he apparently knew of its contents and used that information in his questioning and in his argument." Thus, we conclude that any exculpatory evidence contained in the medical record "would merely [have been] cumulative and reaffirm[ed] what the jury

already knew." *State v. Burnside*, 2016 UT App 224, ¶ 33, 387 P.3d 570.

¶80 Further, regardless of whether Trial Counsel was aware of the relevant document, we agree with the post-conviction court that he "actively and capably advocated for [McCloud's] defense." For example, Trial Counsel elicited testimony from Victim that, in 1998, she met with a "psychiatrist or psychologist" and said only that McCloud "made [her] shower with him and that made [her] uncomfortable." He also attempted to discredit Victim in his arguments to the jury. He said, "[E]leven years ago, [Victim] told her mother I showered with daddy. It made me uncomfortable. [And] [m]other said, [Victim] did he touch you in anyway inappropriately? No he didn't [Victim said]." Trial Counsel continued, "She's told that story how many times since? At least three, maybe four. I showered with my dad, it made me uncomfortable." He then noted that Victim talked to multiple psychologists and psychiatrists and "told that same story. It was uncomfortable to shower with my dad, end of discussion. No talk of improper touching, no talk of inappropriate touching, no talk about anything of an illegal or improper nature." And Trial Counsel concluded, "Several psychologists, psychiatrists, therapists later, I don't believe she's told us everything. So push her, push her, push her. And some 11 years later we hear the same story that was told here in court today."

¶81 In short, the information Trial Counsel failed to obtain "is merely cumulative of the evidence [that was] presented to the jury." *King*, 2012 UT App 203, ¶ 34. And Trial Counsel seems to have otherwise mounted an overall effective defense. *Harrington v. Richter*, 562 U.S. 86, 111 (2011) ("[W]hile in some instances even an isolated error can support an ineffective-assistance claim if it is sufficiently egregious and prejudicial, it is difficult to establish ineffective assistance of counsel when counsel's overall performance indicates active and capable advocacy." (quotation

simplified)). Thus, we conclude that McCloud has failed to show a reasonable probability that, but for Trial Counsel's failure to obtain all of Victim's medical records, the result at trial would have been different. *See Munguia*, 2011 UT 5, ¶ 30. McCloud's ineffective assistance claim accordingly fails.

CONCLUSION

¶82 The post-conviction court erred in determining that McCloud's claims of ineffective assistance of Trial Counsel were procedurally barred. But we affirm the court's denial of McCloud's petition for post-conviction relief, concluding that McCloud has not shown he received constitutionally ineffective assistance from Trial Counsel.