**2021 UT 14**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

LARRY MCCLOUD,
*Appellant,*

*v.*

STATE OF UTAH,
*Appellee.*

No. 20190300
Heard November 9, 2020
Filed May 20, 2021

On Certiorari to the Utah Court of Appeals

Fourth District, Provo
The Honorable Donald J. Eyre, Jr.
No. 070500212

Attorneys:

Brent A. Gold, Salt Lake City, and Andrew Parnes, Ketchum,
Idaho, for appellant

Sean D. Reyes, Att'y Gen., Erin Riley, Asst. Att'y Gen.,
Salt Lake City, for appellee

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1 In 2001 Larry McCloud was convicted of repeatedly sexually molesting his daughter. McCloud appealed and lost. He then pursued post-conviction relief, claiming his trial counsel was ineffective for refusing to consult or call at trial certain experts and for failing to subpoena the victim's medical records. The reviewing court determined that the Post-Conviction Remedies Act (PCRA),

Uᴛᴀʜ Cᴏᴅᴇ § 78B-9-101–110,[1] barred McCloud's claims because they "could have been but [were] not raised at trial or on appeal." *Id.* § 78B-9-106(1)(c). The court, however, allowed McCloud to amend his petition to assert that his appellate counsel was ineffective for failing to raise the same ineffectiveness claims on direct appeal. In the end, the amendment was for naught; the court found that because trial counsel was not ineffective, appellate counsel could not have been ineffective—a clear byproduct of law and logic.

¶2     On review, our court of appeals ruled that the PCRA barred McCloud's claims because they "could have been" brought on appeal had McCloud made a rule 23B motion to supplement the record. It also found that an appellate attorney will not be adjudged deficient for omitting a claim on appeal unless that claim is "obvious from the trial record" and that McCloud's claims were not so obvious. Thus, the court of appeals reasoned, the PCRA barred McCloud's "direct" claims, and appellate counsel was de facto not ineffective—leaving McCloud without a remedy.

¶3     Faced with this higgledy-piggledy outcome, the court of appeals applied the common-law "unusual circumstances" exception to reach McCloud's underlying ineffectiveness claims. Again, for naught as the court of appeals, like the post-conviction court before it, determined that since trial counsel was not ineffective, appellate counsel could not have been ineffective.

¶4     We now take our turn at the wheel. We begin by repudiating any "obvious from the trial record" standard regarding appellate counsel's obligation to raise certain issues on appeal. And we explain that obligation is governed by the *Strickland* reasonableness standard. *See Strickland v. Washington*, 466 U.S. 668 (1984).

¶5     We go on to apply these principles to McCloud's claims. We agree with the lower courts that the PCRA bars McCloud's direct claims against his trial counsel. But we disagree with the court of appeals' *sua sponte* application of the "unusual circumstances" exception. So, we analyze McCloud's claims through the gateway of an ineffective assistance of appellate

---

[1] The legislature recently amended several relevant provisions of the PCRA. *See* 2021 Utah Laws ch. 46 (H.B. 100). All citations herein are to the statutory language in effect at the time of McCloud's first (unamended) petition for post-conviction relief, as recodified in 2008. *See* 2008 Utah Laws ch. 3 (H.B. 78).

counsel claim. At the end of the day, his claims fail because trial counsel was not ineffective. Trial counsel did not perform deficiently by refusing to consult or call experts, and his failure to subpoena the victim's medical records did not prejudice McCloud. Because McCloud's claims fail, we affirm the decision of the court of appeals.

## BACKGROUND

### I. SUMMARY OF FACTS FROM TRIAL AND DIRECT APPEAL

¶6    McCloud's daughter ("Victim") asserted that McCloud sexually abused her multiple times when she was between five and ten years old.[2] According to Victim, these incidents occurred when McCloud and Victim showered and slept together. Victim reported the abuse years later, when she was sixteen.

¶7    The State charged McCloud with one count of aggravated sexual abuse of a child and six counts of sodomy upon a child, all first-degree felonies. The State's case against McCloud primarily relied on Victim's testimony. "At trial, she detailed the incidents of abuse for each count and, for some counts, identified specific dates on which the incidents occurred. The State did not present expert testimony." *McCloud v. State*, 2019 UT App 35, ¶ 5, 440 P.3d 775.

¶8    McCloud and his wife, Cindy McCloud (Victim's step-mother), hired an experienced private defense attorney ("Trial Counsel") to defend the case. At trial, Trial Counsel presented a "factual" defense. He presented McCloud's calendars and notes and a family home video in an attempt to discredit Victim's memory and show that the alleged instances of abuse could not have occurred on the alleged dates.[3] He cross-examined Victim

---

[2] The record of the 2001 trial is not before us, so we rely on the post-conviction record and the parties' briefs for the factual background. "Because this case comes before us after a jury verdict, 'we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal.'" *Gregg v. State*, 2012 UT 32, ¶ 2, 279 P.3d 396 (citation omitted). Although McCloud maintains his assertion of innocence, the facts as stated are not challenged here.

[3] Presumably, Trial Counsel considered this type of defense viable because McCloud spent limited time with Victim. Victim's mother and McCloud separated when Victim was three years old.

(continued . . .)

about why she had not reported the abuse earlier, even though she had told her mother and various therapists and psychologists about showering with McCloud two years prior to reporting actual abuse. Trial Counsel also elicited testimony about Victim's medical history, including depression and a hospitalization from suicidal feelings, and "deteriorated relationships" between McCloud and Victim and McCloud and Victim's mother, suggesting that alleging the abuse was a way for Victim to "get back at her father."

¶9 The jury convicted McCloud on the count of aggravated sexual abuse of a child and three of the six counts of sodomy upon a child.

¶10 McCloud appealed his conviction, hiring a different private attorney ("Appellate Counsel") to represent him. McCloud asserted a variety of claims, many of them tied to ineffective assistance of Trial Counsel.[4] The court of appeals affirmed McCloud's conviction but reduced the count of aggravated sexual abuse of a child to sexual abuse of a child due to a statute of limitations issue. *State v. McCloud*, 2005 UT App 466, ¶¶ 1, 15, 126 P.3d 775.

## II. McCLOUD's POST-CONVICTION PETITION

¶11 Assisted by new counsel, McCloud filed a petition for post-conviction relief under the PCRA. He asserted, *inter alia*, that Trial Counsel was ineffective for refusing to consult or call at trial experts and failing to obtain all of Victim's medical records.

¶12 The State moved to dismiss the petition, arguing the PCRA barred McCloud's claims because they "could have been but [were] not raised at trial or on appeal." *See* UTAH CODE § 78B-9-

---

Victim's mother was awarded custody, and the alleged instances of abuse occurred during McCloud's visitation time.

[4] Specifically, McCloud raised on appeal the following issues: "(1) Prosecution on Count One was barred by the statute of limitations; (2) Prosecutorial misconduct required a new trial; (3) Juror misconduct required a new trial; (4) Inadequate voir dire required a new trial; (5) Improper jury instruction required a new trial; (6) An improper reasonable doubt instruction required a new trial." McCloud did not raise issues (1), (2), (4), or (6) at trial. *See State v. McCloud*, 2005 UT App 466, ¶¶ 5–10, 126 P.3d 775. Therefore, he could only raise them on appeal by showing "plain error, ineffective assistance of counsel, or exceptional circumstances." *Id.* ¶¶ 6, 8, 10 (citation omitted).

106(1)(c). Historically, the State explained, claims of ineffective assistance of counsel were generally exempt from the common-law rule that any alleged trial errors must be raised on appeal. This changed in 1992, the State argued, when rule 23B of the Utah Rules of Appellate Procedure was adopted. Rule 23B allows a party in a criminal appeal to move for a temporary, limited remand to the trial court for additional fact-finding necessary to support a claim of ineffective assistance of counsel. UTAH R. APP. P. 23B(a). Citing this court's decision in *State v. Litherland*, 2000 UT 76, 12 P.3d 92, the State claimed that "[r]ule 23B negated the need to treat ineffective assistance claims differently from any other claims of trial error."

¶13 Thus, the State categorically concluded that "claims of ineffective assistance against trial counsel that are not raised on direct appeal are procedurally barred" by the PCRA because they "could have been" developed through a rule 23B motion and raised on direct appeal.

¶14 The State conceded that McCloud could assert Appellate Counsel was ineffective for failing to raise the trial ineffectiveness claims, but such a claim would fail under the *Strickland* standard of ineffectiveness. *See Strickland v. Washington*, 466 U.S. 668 (1984).

¶15 McCloud responded with two relevant arguments. First, McCloud argued the State's rule 23B argument was inconsistent with established case law regarding appellate counsel's obligation to raise certain claims on appeal. Under that case law, appellate counsel will be found ineffective for omitting a claim only if that claim is "obvious from the trial record." *Lafferty v. State*, 2007 UT 73, ¶ 39, 175 P.3d 530 (citation omitted). But if the claim is "obvious from the trial record," McCloud reasoned, there would be no need to make a rule 23B motion for additional fact-finding. Thus, McCloud argued, "it is precisely because claims of ineffective assistance of counsel are often based on matters not contained in the appellate record that [post-conviction petitions] are permitted," regardless of rule 23B. Second, McCloud relied on Appellate Counsel's advice that he could raise non-record issues on post-conviction appeal. So, McCloud argued, either the State's interpretation of rule 23B in the context of *Litherland* was incorrect, or Appellate Counsel "provided advice that was absolutely incorrect."

¶16 The post-conviction court granted in part the State's motion to dismiss. The court agreed with the State's analysis regarding the intersection of rule 23B and the PCRA's procedural bar. It held that, under *Litherland*, "an ineffective assistance claim

should (and certainly *could*) be raised on appeal" by filing a rule 23B motion, and thus the PCRA barred McCloud's direct claims.

## A. The Evidentiary Hearing

¶17   Still, the court allowed McCloud to amend his petition to include a claim that Appellate Counsel was ineffective for failing to raise the trial counsel ineffectiveness claims on direct appeal. After McCloud did so, the court held an evidentiary hearing to develop the record regarding McCloud's claim that Trial Counsel was ineffective for refusing to consult experts. The McClouds, Trial Counsel, and Appellate Counsel testified at the hearing.

¶18   The McClouds testified they had wanted to present a "scientific" defense based on "parental alienation syndrome." This defense would have utilized expert witnesses in the fields of child memory and false memory, alongside a psychological profile of McCloud, to convince the jury that Victim was fabricating the allegations. McCloud testified that he frequently attempted to raise with Trial Counsel the issue of utilizing experts.

¶19   Trial Counsel testified as to his pre-trial investigation, trial preparation, and defense strategy. He said that he viewed the matter as "basically a he-said/she-said case with what [he] believed was compelling evidence that would discredit the she-said aspect of this case." That evidence, he explained, was contained in McCloud's day planners, calendar notes, and a "videotape taken at Christmas," which showed that the alleged instances of abuse could not have occurred on some of the alleged dates. He also planned to highlight discrepancies in what Victim had reported to various individuals prior to trial. Although he could not create a complete alibi and Utah courts give children considerable leeway in recalling specific dates, Trial Counsel felt that if he could discredit some of Victim's allegations, "the jury should not believe her about anything."

¶20   Regarding the use of experts, Trial Counsel testified that he had in the past used child memory and psychosexual profiling experts. He also explained his general theory of usage of experts:

> Scientifically, when you're dealing with, you know, ballistics, fingerprints, DNA, experts are essential and credible. When you're dealing with psychology, psychological problems and things of that nature, I think the issue is more clouded and less clear. I think you have to evaluate the specific facts of your case, the type of case you're dealing with, and make

> judgments based upon what you believe is going to
> be necessary.

Trial Counsel thought this case was "more of ... a factual determination issue as opposed to a battle of experts." He wanted to present a "specific defense" rather than take a "shotgun approach." Ultimately, Trial Counsel did not consult prior to trial or call at trial any expert witnesses. He later explained that while expert consultation would not have been "inconsistent with the defense" presented, the "downside" would have been "the time and the money that it would cost to consult with an expert and develop that line of defense."[5]

¶21 Regarding the medical records, Trial Counsel testified he did not subpoena Victim's medical records. Prior to trial, the State provided Trial Counsel with some of Victim's medical and mental health records. As a result, Trial Counsel "believed [he] had all of the records."

¶22 Appellate Counsel testified that, although McCloud complained to her of Trial Counsel's failure to consult experts and subpoena Victim's medical records, she did not raise those issues on direct appeal. While she did not consider those claims to be meritless, pursuing them would have required "extra-record investigation." And she thought McCloud had "a pretty good appeal" on the issues "contained in the record." As such, she advised McCloud that he could bring those claims later in a post-conviction petition.

¶23 But concluding now that McCloud's claims were procedurally barred, Appellate Counsel stated that she gave McCloud "bad legal advice." She testified that she was still "a little bit fuzzy" on whether appellate counsel needed to file a rule 23B motion to assist in bringing an ineffectiveness claim that was "a little bit apparent in the record." She also stated that, in hindsight,

---

[5] Trial Counsel also testified that he saw an additional downside to using experts in preparation for trial: "If I have an expert who gives me information that potentially is damaging to my client's position and presentation, I think my effectiveness may well be influenced by having that kind of information." While this single statement does not discount Trial Counsel's otherwise capable representation, *see infra* Analysis part II, we generally do not advise counsel to intentionally blind themselves to potential holes in their arguments.

she "should have hired an investigator and whatever experts to assess whatever the issues are that he needed investigated."

¶24   McCloud also subpoenaed Victim's medical records to develop the case record regarding his claim that Trial Counsel was ineffective for failing to obtain those records. The post-conviction court issued the subpoena, conducted an in-camera review of the medical records, and provided to the parties one document: a discharge summary of a meeting between Victim and a doctor three weeks prior to Victim's first claims to law enforcement of the alleged abuse. The document states, in relevant part,

> [Victim] has been having flashbacks and nightmares about previous sexual abuse by her biological father that occurred between the ages of 6 and 8. At that time it was discovered that he had been having the patient shower with him and was washing her in the shower. He also insisted on sleeping with her. The patient does not remember him being inappropriate sexually in other ways, and it is unclear whether this was actually a case of molestation or a father with extreme boundary problems.

### B. The Post-Conviction Court's Decision

¶25   After this additional discovery and oral arguments, the post-conviction court denied McCloud's petition. The court first addressed the experts issue. It found the State did not address how the "language in Rule 23B may affect the well-established standard that the [omitted] claims must be obvious from the trial record" for an ineffectiveness claim to succeed. Thus, even though Appellate Counsel admitted that she had given McCloud bad legal advice and should have further investigated his claims against Trial Counsel, the court could not conclusively find her deficient for omitting those claims because they were not "obvious from the trial record."

¶26   Regardless of the sufficiency of Appellate Counsel's performance, the post-conviction court found her performance did not prejudice McCloud for two reasons. First, even if Appellate Counsel had made a rule 23B motion to further develop the claims, "there [was] no evidence that the appellate court would have granted that motion." Second, there was no prejudice because Trial Counsel was not ineffective. The court found that "Trial Counsel did not perform deficiently—he made a strategic decision to focus limited time on theories that he believed to be likely of success."

¶27   The post-conviction court eventually ruled on the medical records issue after the court of appeals resolved an interlocutory

appeal filed by the State. The post-conviction court found that Appellate Counsel performed deficiently by advising McCloud that he could bring his ineffectiveness claims on post-conviction petition and by failing to file a rule 23B motion to develop those claims. Still, those failures did not prejudice McCloud. And although Trial Counsel performed deficiently "by failing to request all of the Victim's relevant medical records," "he apparently knew of [the relevant record's] contents and used that information in his questioning and his argument." Thus, the court found, Trial Counsel's deficient performance did not prejudice McCloud; "[l]ikewise, appellate counsel's deficiency therefore could not have prejudiced Petitioner."

## III. THE COURT OF APPEALS

¶28   McCloud appealed the denial of his post-conviction petition. *McCloud v. State*, 2019 UT App 35, 440 P.3d 775. He raised two issues. First, he argued that the post-conviction court erred in finding that the PCRA barred his claims of trial counsel ineffectiveness. *Id.* ¶ 2. Second, he argued that Trial Counsel was ineffective. *Id.*

¶29   On the first issue, the court of appeals characterized the case as "concern[ing] the duty of appellate attorneys to investigate claims of ineffective assistance of counsel that depend on facts outside the trial record." *Id.* ¶ 32. The court perceived the following logical dilemma: Citing this court's interpretation of rule 23B in *State v. Litherland*, 2000 UT 76, 12 P.3d 92, it concluded that "appellate attorneys have a duty to investigate potential ineffective assistance claims that are based on facts outside the record." *McCloud*, 2019 UT App 35, ¶ 41 (citing *Litherland*, 2000 UT 76, ¶ 16). "And if an ineffective assistance of counsel claim could have been raised in a rule 23B motion, the general rule is that it will be barred on post-conviction." *Id.* Because Appellate Counsel "could have" made a rule 23B motion to develop McCloud's claims against Trial Counsel, the court reasoned, the PCRA barred those claims. *Id.* ¶ 46. McCloud could still bring those claims through the lens of an appellate ineffectiveness claim, but under Utah case law, an appellate attorney will be found deficient for omitting a claim only if the claim is "obvious from the trial record." *Id.* ¶ 47 (citing *Gregg v. State*, 2012 UT 32, ¶¶ 44–45, 279 P.3d 396). And here, the claims were not "obvious from the trial record," so Appellate Counsel was de facto not ineffective. *See id.* ¶¶ 47–49. The end result, the court reasoned, is that "[a] strict interpretation of [the PCRA's procedural bar] . . . would foreclose any potential remedy for McCloud's claims." *Id.* ¶ 50. The court found this result "an obvious injustice"

and agreed with McCloud that "it would place an undue burden on appellate attorneys 'to root out instances of trial counsel ineffectiveness' to avoid a procedural bar on post-conviction." *Id.* (citation omitted).

¶30 The court of appeals then applied the common-law "unusual circumstances" exception to the PCRA's procedural bar. *See id.* ¶¶ 42, 46–51. Under this exception, the statute will not preclude claims of ineffective assistance of trial counsel not raised on direct appeal if there are "unusual circumstances" justifying the petitioner's failure to raise those claims, *id.* ¶ 42 (quoting *Carter v. Galetka*, 2001 UT 96, ¶ 14, 44 P.3d 626), resulting in "obvious injustice or a substantial and prejudicial denial of a constitutional right." *Id.* (quoting *Taylor v. State (Taylor II)*, 2007 UT 12, ¶ 122, 156 P.3d 739). The court then fashioned a new test for when claims of ineffective assistance of trial counsel can be raised on post-conviction petition under the "unusual circumstances" exception:

> [C]laims that could have been raised in a rule 23B motion will not be barred on post-conviction when, as here, the record on appeal did not indicate a reasonable probability that developing those claims would have resulted in reversal. In such cases, because the record would not lead a reasonable, competent attorney to develop the claims on appeal, a petitioner may pursue them in a petition for post-conviction relief.

*Id.* ¶ 51.

¶31 With the procedural bar cleared, the court of appeals addressed McCloud's underlying claims of trial counsel ineffectiveness. It first addressed the experts claim and found Trial Counsel did not perform deficiently by refusing to consult or use at trial expert witnesses. *Id.* ¶ 73. The court considered the nature of the experts' potential testimony, Trial Counsel's experience with criminal defense and similar experts, the thoroughness of his pre-trial investigation, and his overall trial strategy. *See id.* ¶¶ 62–72. The court concluded that: "Trial Counsel fulfilled his duty to investigate the facts of the case[] and based on that investigation, made a 'reasonable decision' that consulting experts was unnecessary." *Id.* ¶ 73 (citing *Strickland v. Washington*, 466 U.S. 668, 691 (1984)).

¶32 The court of appeals then addressed the medical records issue and found that Trial Counsel's performance did not prejudice McCloud. It found that the discharge summary "seems to be affirmative evidence of abuse. And, if presented at trial, it could have been harmful to McCloud." *Id.* ¶ 76. Even if not harmful, the

"evidence merely would have been cumulative of what was presented to the jury" because Trial Counsel elicited on cross-examination information very similar to that contained in the discharge summary. *Id.* ¶ 78. The court concluded "that McCloud has failed to show a reasonable probability that, but for Trial Counsel's failure to obtain all of Victim's medical records, the result at trial would have been different." *Id.* ¶ 81 (citing *State v. Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082).

¶33 In the end, the court of appeals determined that the post-conviction court erred in finding McCloud's claims procedurally barred, but it affirmed the denial of his petition on the underlying merits. *Id.* ¶ 82. McCloud appealed, and this court granted certiorari. We have jurisdiction under Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶34 "On certiorari, this court reviews the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *State v. Baker*, 2010 UT 18, ¶ 7, 229 P.3d 650. On the underlying claims, "[w]hen confronted with ineffective assistance of counsel claims, we review a lower court's purely factual findings for clear error, but [we] review the application of the law to the facts for correctness." *Archuleta v. State*, 2020 UT 62, ¶ 20, 472 P.3d 950 (alterations in original) (citation omitted).

## ANALYSIS

¶35 McCloud argues that he was wrongly convicted of multiple felonies because his Trial Counsel was ineffective. Specifically, he argues that Trial Counsel failed to consult experts or subpoena Victim's medical records when preparing his defense and that these failures led to his conviction. McCloud did not raise these issues on direct appeal because Appellate Counsel considered these issues not "obvious from the trial record" and advised McCloud that he could raise them on post-conviction petition. When McCloud did so, the post-conviction court found the PCRA barred the claims because they "could have been" raised on appeal by filing a rule 23B motion. *See* UTAH CODE § 78B-9-106(1)(c); UTAH R. CIV. P. 23B.

¶36 McCloud's procedural conundrum is rooted in a misstatement in our case law regarding appellate counsel's obligation to raise certain claims and in a misunderstanding of rule 23B's purpose. We address his appeal in two steps.

¶37 First, we take this opportunity to clarify appellate counsel's obligations to conduct extra-record investigation and

raise certain claims on direct appeal of a criminal conviction or sentence. We repudiate the requirement that appellate counsel can be found deficient for omitting a claim only if that claim is "obvious from the trial record."[6] We make clear that appellate counsel's obligation to raise certain issues is solely governed by the *Strickland* test. *See Strickland v. Washington*, 466 U.S. 668 (1984). That test is simply whether counsel performed reasonably "under prevailing professional norms." *Id.* at 688. And it encompasses both any duty of counsel to conduct extra-record investigation and any decision to file or not file a rule 23B motion to further develop claims raised on appeal.

¶38   Second, we address McCloud's specific claims. We find the PCRA bars his direct claims against Trial Counsel, but he can still assert those claims through the lens of an appellate ineffectiveness claim. To prevail on any ineffectiveness claim, a petitioner must show that: (1) counsel performed deficiently and (2) the deficient performance prejudiced the defense. *Id.* at 687. Here, we need not decide whether Appellate Counsel performed deficiently by omitting the claims on direct appeal. Any deficient performance could not have prejudiced McCloud because Trial Counsel was not ineffective. Trial Counsel did not perform deficiently by not consulting experts; rather, he made a reasonable strategic decision based on the law and facts of the case and his theory of the defense. And Trial Counsel's failure to obtain all of Victim's medical records did not prejudice the outcome—such an investigation would have yielded a single record amounting to cumulative evidence.

¶39   On these grounds, we affirm the decision of the court of appeals and deny McCloud's post-conviction petition.

---

[6] This requirement was first adopted as dicta in *Lafferty v. State*, 2007 UT 73, ¶ 39, 175 P.3d 530, and subsequently repeated and applied by this court. *See, e.g., Kell v. State*, 2008 UT 62, ¶ 42, 194 P.3d 913; *Menzies v. State*, 2014 UT 40, ¶ 211, 344 P.3d 581. Although the parties do not formally ask us to overrule *Lafferty*, they do ask us to clarify this area of the law. And they brief both the problem and potential solutions. As we explain below, we find implicit in their ask an argument to overrule *Lafferty*. *See infra* ¶¶ 59–61. Given this implicit ask, adequate briefing on this issue, and the nature of *Lafferty* as a misstatement that has been repeated as law, we are comfortable in taking this opportunity to overrule the "obvious from the trial record" "requirement" established in *Lafferty*.

## I. *STRICKLAND* GOVERNS APPELLATE COUNSEL'S OBLIGATIONS TO RAISE CERTAIN ISSUES ON DIRECT APPEAL

¶40 Substantively, McCloud's complaint is that Trial Counsel was ineffective for his refusal to consult experts and failure to subpoena Victim's medical records. However, much of the fight around his petition has been over the proper procedure by which he can (if at all) raise those claims. The parties, post-conviction court, and court of appeals all have, at times, either argued for or applied a different procedural avenue by which these claims may proceed.[7]

¶41 Much of this confusion is rooted in misleading language in our case law. In *Carter v. Galetka*, we cited language from a Tenth Circuit Court of Appeals case stating that appellate counsel may be found ineffective for omitting a "dead-bang winner": a claim that was "obvious from the trial record" and would have been likely to result in reversal. 2001 UT 96, ¶ 48, 44 P.3d 626 (quoting *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995)). *Carter* and *Banks*— both habeas corpus petitions from defendants sentenced to death—

---

[7] For example, the State argues that the PCRA bars McCloud's claims of ineffective Trial Counsel "because he could have raised them on appeal by filing a rule 23B motion for remand." The district court followed a similar line of thinking but added that Appellate Counsel also performed deficiently when "[s]he told petitioner that he could raise other ineffectiveness claims not in the record later, in post-conviction relief," and thus "fail[ed] to investigate this claim." The court of appeals erroneously concluded from our case law that "if an ineffective assistance of counsel claim could have been raised in a rule 23B motion, the general rule is that it will be barred on post-conviction." *McCloud v. State*, 2019 UT App 35, ¶ 41, 440 P.3d 775. Yet, "our precedent also establishes that Appellate Counsel was not ineffective for omitting McCloud's claims because they were not 'obvious from the trial record.'" *Id.* ¶ 50 (quoting *Gregg v. State*, 2012 UT 32, ¶ 44, 279 P.3d 396). Perceiving a Catch-22 that would prohibit McCloud from ever raising his potentially meritorious claims regarding Trial Counsel's effectiveness, the court applied the "unusual circumstances" common-law exception to avoid "an obvious injustice" and directly reach those claims. *Id.* (citation omitted). McCloud, for his part, presumably now relies on the court of appeals' application of this exception and directly briefs only the claims against Trial Counsel, ignoring the Appellate Counsel gateway altogether.

used this language merely as an *example* of a claim for which appellate counsel could be found ineffective for omitting. This court then repeated the "obvious from the trial record" language in a pair of 2007 cases, stating it as a *rule* governing appellate counsel's obligation to raise certain claims on appeal. *Lafferty v. State*, 2007 UT 73, ¶ 39, 175 P.3d 530 ("For a petitioner to prove that counsel was ineffective for omitting a claim, he *must* show that the 'issue [was] obvious from the trial record and . . . probably would have resulted in reversal on appeal.'" (alterations in original) (emphasis added) (quoting *Taylor v. State (Taylor II)*, 2007 UT 12, ¶ 16, 156 P.3d 739)). Thus, we inadvertently elevated that language from an *example* to a *rule*.

¶42 This misstatement has since sown confusion in the realm of post-conviction petitions. We take this opportunity to fix it. We begin by tracing the lineage of the "obvious from the trial record" "test" and explaining how any reliance on this or similar language is misplaced when assessing the scope of an appellate attorney's duty to investigate or raise certain claims. We then explain how that duty is instead dictated by the *Strickland* standard of "reasonableness under prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). And this standard encompasses the question of when an appellate attorney should move to supplement the record under rule 23B of the Utah Rules of Appellate Procedure.

*A. Appellate Counsel's Obligation to Raise Certain Issues on Appeal Is Not Limited to Issues "Obvious from the Trial Record"*

¶43 As the court of appeals put it, "[t]his case concerns the duty of appellate attorneys to investigate claims of ineffective assistance of counsel that depend on facts outside the trial record." *McCloud v. State*, 2019 UT App 35, ¶ 32, 440 P.3d 775.

¶44 The court of appeals identified tension between the PCRA's procedural bar and our case law regarding appellate counsel's duty to raise certain claims on appeal. *Supra* ¶ 29. The result of this tension, the court reasoned, "would encourage—even compel—a reasonable attorney to conduct [a thorough extra-record investigation] to avoid barring claims on post-conviction." *McCloud*, 2019 UT App 35, ¶ 32 n.5. Yet this result is at odds with accepted professional norms of appellate review. Accordingly, the court "note[d] the need for guidance on this issue." *Id.* McCloud

and the State also ask for such guidance; we now endeavor to provide it.[8]

¶45    We begin with the observation that trial attorneys and appellate attorneys serve very different, and often specialized, roles in our legal system. While trial attorneys must of course identify and understand legal issues, much of their expertise lies in developing facts—making discovery motions, interviewing witnesses, and arguing evidentiary issues. Appellate attorneys, on the other hand, are expected to do comparatively little fact-finding—their expertise lies in spotting and arguing legal complexities as applied to the established facts of the case on the record. This does not mean that appellate attorneys are incapable of doing extra-record factual investigations; doing so is just not necessarily in their wheelhouse.

¶46    Nevertheless, circumstances may exist that would prompt an appellate attorney to conduct some amount of factual research. Often, these circumstances occur in the context of a potential

---

[8] While the parties all identify the need for guidance in this area of the law, they generally frame the issue as an appellate attorney's obligation to supplement the record under rule 23B prior to appeal. For example, the court of appeals stated: "McCloud asks us to 'address appellate counsel's responsibility to root out instances of trial counsel ineffectiveness' and potentially move for remand under rule 23B. We note the need for guidance on this issue." *McCloud*, 2019 UT App 35, ¶ 32 n.5. The State asks us (correctly, as we explain below in part I(B)(2)) to "clarify that appellate counsel may be found ineffective for not filing a rule 23B motion if omitting the motion violated the *Strickland* standard." And McCloud states that defendants and their direct appeal attorneys find themselves in a "current limbo . . . given the uncertainty of the conflicting procedural scheme in Utah."

As we explain below, the proper inquiry is not whether appellate counsel failed to file a rule 23B motion to further develop a certain claim on direct appeal, but whether appellate counsel's performance was objectively unreasonable under *Strickland*. *See infra* part I(B)(2). Still, given the complexity of the procedural interactions between rule 23B, this court's "obvious from the trial record" language, and the PCRA's procedural bar, we do not fault the parties for not asking the precisely correct question. As such, we hopefully provide the answers they seek.

ineffective assistance of counsel claim. *See Smith v. Mullin*, 379 F.3d 919, 926 (10th Cir. 2004) ("Extra-record facts are central to the vast majority of ineffective assistance of counsel claims . . . .").

¶47   Recognizing that ineffective assistance of counsel claims often rely on additional factual development, in 1992, this court adopted rule 23B of the Utah Rules of Appellate Procedure. That rule provides a party "may" move for a temporary remand for additional fact-finding necessary to support a claim of ineffective assistance of counsel. UTAH R. APP. P. 23B. Still, the rule does not specify when, if at all, an appellate attorney could be found ineffective for not doing so. In other words, the rule does not tell us under what circumstances an appellate attorney *must* conduct additional fact-finding necessary to support an ineffectiveness claim.

¶48   We have attempted to fill this perceived gap in the text of rule 23B by cherry-picking from state and federal precedent "rule" language originally intended as exemplary language. The "obvious from the trial record" language is the most common culprit and has created the most mischief. This "test" first appeared in Utah jurisprudence in *Carter*, 2001 UT 96. There, the defendant was convicted of murder and sentenced to death. *Id.* ¶ 2. Ten years later, he filed a writ of habeas corpus asserting, *inter alia*, ineffective assistance of appellate counsel. *Id.* ¶¶ 3, 32. To assist with its analysis of the ineffectiveness claims in the context of a habeas corpus petition challenging a conviction and death sentence, the court looked to the Tenth Circuit case *Banks*. *Id.* ¶ 48. That court explained:

> When a habeas petitioner alleges that his counsel was ineffective for failing to raise an issue on appeal, we examine the merits of the omitted issue. Failure to raise an issue that is without merit "does not constitute constitutionally ineffective assistance of counsel" because the Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal. Thus, counsel frequently will "winnow out" weaker claims in order to focus effectively on those more likely to prevail. However, an "appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' even though counsel may have presented strong but unsuccessful claims on appeal."

*Banks*, 54 F.3d at 1515 (citations omitted). *Banks*, in turn, cited to *U.S. v. Cook*, which equated a "dead-bang winner" to an issue that

"was obvious on the record, and must have leaped out upon even a casual reading of [the] transcript" *and* "which would have resulted in a reversal on appeal." 45 F.3d 388, 395 (10th Cir. 1995) (alteration in original) (quoting *Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987)). Clearly, the *Cook* and *Matire* courts intended the "dead-bang winner" test to be a very high bar—an omission of a claim so egregious that there could be no doubt as to an appellate attorney's ineffectiveness. Nonetheless, the *Banks* court lowered that bar by defining a "dead-bang winner" as an "issue which is *obvious from the trial record* and one which *probably* would have resulted in a reversal on appeal."[9] *Banks*, 54 F.3d at 1515 n.13 (emphases added). And this court adopted that definition in *Carter* by quoting the *Banks'* footnote and simply saying: "We accept the reasoning of *Banks*." *Carter*, 2001 UT 96, ¶ 48.

¶49 Thus, the *Carter* court used "obvious from the trial record" as a means of describing a "dead-bang winner"—a term in turn borrowed from federal habeas corpus jurisprudence. And "dead-bang winner" was never intended as the sole test of when an attorney could be found ineffective for failing to raise a particular claim on appeal. It was intended as an example—a sufficient, but not necessary, condition for a finding of ineffectiveness.

¶50 In 2007, we repeated the "obvious from the trial record" language in a pair of post-conviction petitions where the defendants, sentenced to death, alleged ineffective assistance of appellate counsel. In *Taylor II*, a death row inmate asserted twenty-five grounds for post-conviction relief, all tied to alleged ineffective assistance of trial or appellate counsel. 2007 UT 12, ¶¶ 9–11. The court quoted *Carter* and *Banks*, stating that "[a] post-conviction petitioner *can* show that his appellate counsel was ineffective" if appellate counsel omitted a claim that is a "dead-bang winner," meaning an "issue which is obvious from the trial record and one which probably would have resulted in reversal on appeal." *Id.* ¶ 16 (emphasis added) (quoting *Carter*, 2001 UT 96, ¶ 48). That was a correct statement of the law; so far, so good.

---

[9] The Tenth Circuit Court of Appeals has since clarified that the lower burden stated in *Banks*—that the omitted issue probably would have resulted in reversal, rather than "would have resulted in a reversal"—is the proper standard for effectiveness claims under the *Strickland* standard. *Neill v. Gibson*, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001).

¶51 Seven months later, we resolved the unrelated *Lafferty* case. 2007 UT 73. There, a defendant also sentenced to death sought post-conviction relief, also asserting twenty-five claims of trial counsel ineffectiveness through the "lens" of appellate counsel ineffectiveness.[10] *Id.* ¶¶ 5, 8, 45, 48. Citing *Taylor II*, the court stated: "For a petitioner to prove that counsel was ineffective for omitting a claim, he *must* show that the 'issue [was] obvious from the trial record and . . . probably would have resulted in reversal on appeal.'" *Id.* ¶ 39 (alteration in original) (emphasis added) (quoting *Taylor II*, 2007 UT 12, ¶ 16). This was an incorrect statement of the law.

¶52 This rewording of *Taylor II* modified the analysis in two significant ways: one intentional, one not. First, the court explained in a footnote that it deliberately omitted the term "dead-bang winner."

> While this type of omission remains an accurate example of ineffective assistance of appellate counsel, we are reluctant to repeat the "dead-bang winner" language here because of the possibility that it may be viewed as the standard for relief, rather than as an example of a circumstance when relief would be warranted. If such a mistake were made, it would overstate the petitioner's burden.

*Id.* ¶ 39 n.2. Thus, the court clarified that a "dead-bang winner" was meant only as an "example" of when appellate counsel would be found deficient, not a "standard."

¶53 Second, while the court rejected "dead-bang winner" as a standard, it inadvertently adopted another. *Taylor II* stated that a petitioner *"can"* succeed on a claim of appellate ineffectiveness if counsel omitted a "dead-bang winner," which is an issue "obvious from the trial record." But *Lafferty* stated that a petitioner *"must"* show that appellate counsel omitted an issue "obvious from the trial record."

---

[10] Lafferty first attempted to directly assert his claims against trial counsel in his PCRA petition. *Id.* ¶ 45. When the State moved for summary judgment, he filed a memorandum in opposition to the motion wherein he characterized his claims as ineffective assistance of appellate counsel. *Id.* ¶ 46. Although the court held this to be an impermissible amendment to his pleading, *id.* ¶ 47, it nevertheless proceeded to dispose of Lafferty's claims on the merits in the alternative. *See id.* ¶¶ 48–52.

¶54 Ultimately, the court did not apply its newly articulated test. On the merits, the court implied that appellate counsel had likely just "winnow[ed] out weaker claims in order to focus effectively on those more likely to prevail." *Id.* ¶ 49 (internal quotation marks omitted) (citing *Carter*, 2001 UT 96, ¶ 48). Regardless of the true reason for omitting those claims, the court held the defendant failed to carry his burden of proof or establish prejudice. *Id.* ¶¶ 50, 51. Thus, the statement that an appellate attorney "must" omit an issue "obvious from the trial record" in order to be proven ineffective was untested and is dicta.

¶55 Nevertheless, we have been stating and applying *Lafferty* as a bright-line test ever since. *See, e.g.*, *Kell v. State*, 2008 UT 62, ¶ 42, 194 P.3d 913 ("To show that appellate counsel was ineffective in failing to raise a claim, the petitioner must show that the issue [was] obvious from the trial record . . . ." (alteration in original) (internal quotation marks omitted) (citing *Lafferty*, 2007 UT 73, ¶ 39)); *Ross v. State (Ross II)*, 2012 UT 93, ¶¶ 16, 45, 293 P.3d 345 (explaining that the district court applied the "obvious from the trial record" test and repeating that an otherwise effective appellate counsel may still be found ineffective for omitting a "dead-bang winner" (citation omitted)); *Menzies v. State*, 2014 UT 40, ¶ 211, 344 P.3d 581 (explaining that while the *Strickland* two-part test applies to all ineffectiveness claims, the "obvious from the trial record" test is an additional requirement for a claim that appellate counsel was ineffective for failing to raise an issue, and applying that test). Indeed, the post-conviction court below described "the well-established standard that the [omitted] claims must be obvious from the record."

¶56 This unintended elevation of "obvious from the trial record" from an *example* to a *standard* brings us to the court of appeals' treatment of McCloud's petition. The court found the PCRA barred McCloud's direct claims against Trial Counsel. *McCloud*, 2019 UT App 35, ¶ 50. But if McCloud brought those claims through the gateway of an appellate ineffectiveness claim, that claim would necessarily fail because the omitted claims were not "obvious from the trial record." *See id.* Either way, the court reasoned, McCloud could not reach his underlying claims of Trial Counsel's ineffectiveness. *See id.*

¶57 The court of appeals applied the common-law "unusual circumstances" exception to reach McCloud's underlying claims. *See id.* ¶¶ 42, 51. In doing so, the court articulated a new test for when the PCRA would not bar claims omitted on direct appeal—a test that seemingly attempts to reconcile Utah jurisprudence

interpreting the PCRA's procedural bar, applying the "obvious from the trial record" "test," and expressing an appellate attorney's duties to raise claims under the federal *Strickland* standard of effectiveness.

> [C]laims that could have been raised in a rule 23B motion will not be barred on post-conviction when, as here, the record on appeal did not indicate a reasonable probability that developing those claims would have resulted in reversal. In such cases, because the record would not lead a reasonable, competent attorney to develop the claims on appeal, a petitioner may pursue them in a petition for post-conviction relief.

*Id.* ¶ 51.

¶58 We largely approve of the court of appeals' ultimate reasoning, but not the path it took to get there. The "unusual circumstances" exception was unbriefed by the parties and raised *sua sponte* by the court. Still, we recognize the court's struggle with applying our erroneous *Lafferty* standard to the PCRA's procedural bar. As such, we now repudiate the premise articulated in *Lafferty* that, in order to find appellate counsel ineffective for omitting an issue, a petitioner "*must* show that the 'issue [was] obvious from the trial record.'" (Emphasis added).

¶59 In taking this step, we note that all parties and the court of appeals have asked for clarification regarding an appellate attorney's duty to raise certain claims on appeal. *Supra* ¶ 44 n.8. In so doing, they identify the mischief caused by *Lafferty* and the need for a more workable standard. The State comes closest to asking for a direct repudiation of *Lafferty*, calling it a "false premise rooted in this Court's case law" and saying (correctly) that it "neither defines the entire extent of appellate counsel's obligations nor limits *Strickland's* remedy to its violation." McCloud asks us to adopt a "clear, defined rule providing [appellate counsel] with proper guidance in how to review, investigate if necessary, and present claims of trial counsel ineffectiveness." We find these statements to be implicit invitations to overrule *Lafferty*, complete with the necessary adversarial briefing for us to do so.

¶60 Importantly, this is not a situation of overruling precedent to correct a faulty judicial analysis. *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 24, 345 P.3d 553 (explaining that the first factor in the *stare decisis* analysis is "the persuasiveness of the authority and reasoning on which the precedent is based"). Our statement in *Lafferty* did not rely on "weak authorities" or "weak precedent." *Id.*

¶¶ 25, 26. Nor did it "overuse" any particular prong or factor of an existing test. *See id.* ¶ 30. It was, by our reckoning, a simple misstatement of the law that went unnoticed because it was not actually adjudicated in *Lafferty*. In *Taylor II*, we stated that a defendant *can* prove ineffectiveness by showing that appellate counsel omitted a meritorious claim "obvious from the trial record." But seven months later, we wrote in *Lafferty* that a defendant *must* show the same. We did so with no explanation for this change or analysis of the ramifications—likely because *Lafferty* did not actually apply its changed language. This misstatement has yielded an unworkable procedural framework—one which all parties agree needs fixing. *See Coburn v. Whitaker Constr. Co.*, 2019 UT 24, ¶ 14, 445 P.3d 446 ("We thus don't overrule our precedents unless they've proven to be unpersuasive and unworkable, create more harm than good, and haven't created reliance interests." (citation omitted)).

¶61 Comfortable with this case as an appropriate vehicle for doing so, we repudiate *Lafferty*'s statement that appellate counsel can be found ineffective for omitting a claim only if that claim was "obvious from the trial record." We next explain that an appellate attorney may be found ineffective for omitting a claim only if a reasonable attorney, acting under prevailing professional norms, would have brought that claim.

*B. Appellate Counsel's Obligation to Raise Certain Issues or Conduct Extra-Record Investigation Is Defined by Reasonableness Under Prevailing Professional Norms*

¶62 We now explain how the *Strickland* standard of reasonableness under prevailing professional norms prescribes an appellate attorney's obligation to raise certain issues on appeal. In subsection (1), we describe the *Strickland* standard of attorney effectiveness and its historical resilience to attempts to further refine it. In subsection (2), we show how an appellate attorney's decision to make or not make a rule 23B motion falls under the *Strickland* analysis.

1. The *Strickland* Reasonableness Standard Is the Sole Measure of Appellate Counsel Effectiveness

¶63 "A defendant has the right to the effective assistance of appellate counsel under the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Taylor II*, 2007 UT 12, ¶ 16. "The standard for evaluating whether appellate counsel is ineffective is the same *Strickland* standard used to determine whether trial counsel is ineffective" under the Sixth Amendment. *Kell*, 2008 UT 62, ¶ 42. That Amendment provides: "In all criminal

prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.

¶64   In *Strickland v. Washington*, the United States Supreme Court articulated a test for effective assistance of counsel under the Sixth Amendment. 466 U.S. 668. Under *Strickland*, any successful ineffective assistance of counsel claim requires the defendant to show that (1) counsel performed deficiently and (2) the deficient performance prejudiced the defense. *Id.* at 687. Under the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. The performance is "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (citing *Strickland*, 466 U.S. at 689). Under the performance prong, Utah courts assess deficient performance under "an objective standard of reasonable conduct." *Lafferty*, 2007 UT 73, ¶ 39 (citation omitted). Under the prejudice prong, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilder*, 2018 UT 17, ¶ 17, 420 P.3d 1064 (quoting *Archuleta v. Galetka*, 2011 UT 73, ¶ 40, 267 P.3d 232).

¶65   The *Strickland* court explained that the language of the Sixth Amendment "relies . . . on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions." 466 U.S. at 688. And Utah courts have routinely reiterated this presumption of attorney competence. *See, e.g.*, *Menzies v. State*, 2014 UT 40, ¶ 76, 344 P.3d 581 ("We 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)); *State v. Gallegos*, 2020 UT 19, ¶ 34, 463 P.3d 641 (same); *State v. Scott*, 2020 UT 13, ¶ 35, 462 P.3d 350 (substantially the same).

¶66   Articulating its reasonableness standard, the *Strickland* court was careful to forewarn that "[m]ore specific guidelines are not appropriate." 466 U.S. at 688. Since *Strickland*, federal courts have heeded this warning and routinely refused to adopt a more refined test of attorney performance. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 391 (2000) (explaining that "the *Strickland* test 'of necessity requires a case-by-case examination of the evidence.'" (citation omitted)); *Dewald v. Wriggelsworth*, 748 F.3d 295, 304 (6th Cir. 2014) (Cole, J., dissenting) ("In *Strickland*, the Supreme Court announced a generalized legal standard that lower courts must apply to a

variety of factual settings. There, the court acknowledged the difficulty in articulating a bright-line rule that could apply to every variation of inadequate legal representation." (citing *Strickland*, 466 U.S. at 687–88)).

¶67 Nonetheless, as explained above in section (A), Utah courts have inadvertently grafted onto the *Strickland* standard an additional requirement: that appellate counsel cannot be found ineffective for omitting a claim unless that claim is "obvious from the trial record." We repudiate this unnecessary addition and today hold that the only measure of an appellate attorney's performance—including a decision to omit a certain claim—is reasonableness under prevailing professional norms and in light of the circumstances of the appeal.

¶68 McCloud now asks us to "clarify the scope of [appellate] counsel's duties on direct appeal in Utah, which have been uncertain under prior case law." While appellate attorneys across the state may sleep more soundly at night if we were to adopt a bright line test, we have seen the mischief that such a test can cause. *See supra* ¶ 29 (explaining the court of appeals' struggle to reconcile rule 23B and *Litherland* with our prior "obvious from the trial record" standard). Therefore, we only say that the duty to investigate and raise certain claims on direct appeal is governed by a test of reasonableness under the peculiar circumstances of a given case.

¶69 Consideration of the circumstances is what breathes life into the reasonableness test and dictates the scope of any duty to conduct extra-record investigation. Typically, for example, appellate counsel is expected to unearth meritorious claims by reviewing the trial record and interviewing the appellant. *See, e.g., Mikell v. Terry*, 2012 WL 6214622, at *8 (N.D. Ga. 2012) ("[Defendant] discharged his duty to investigate Petitioner's case by thoroughly reviewing the case file and transcript and interviewing the Petitioner and trial counsel."); *Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1986) ("When a claim of ineffective assistance of counsel is based on failure to raise issues on appeal, we note it is the exceptional case that could not be resolved on an examination of the record alone."). But we do not deny the possibility that, under certain circumstances, appellate counsel may have an obligation to conduct further investigation. For example, although "strategic choices [to assert or omit a claim] made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *Strickland*, 466 U.S. at 690, appellate counsel still may be ineffective "when ignored issues are clearly

stronger than those presented." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citation omitted). At heart, the *Strickland* analysis is necessarily a fact-intensive and case-specific inquiry. *See Murphy v. Royal*, 875 F.3d 896, 922 (10th Cir. 2017) ("Although claims of lawyer ineffectiveness are each unique and require fact-intensive analysis, *Strickland*'s framework still applies, and the variety of fact patterns obviates neither the clarity of the rule nor the extent to which the rule must be seen as established by [the Supreme] Court." (alteration in original) (citation omitted) (internal quotation marks omitted)).

¶70    The *Strickland* test also incorporates many of our *examples* of omitted claims that could support a finding of ineffective assistance of appellate counsel. An appellate attorney's duty to investigate and raise claims "obvious from the trial record," or based on "red flags," *Ross II*, 2012 UT 93, ¶ 51, or "obvious errors," *Gregg*, 2012 UT 32, ¶ 45, in the record depends on the totality of circumstances of the appeal. At one extreme, appellate counsel likely could be found ineffective for omitting a "dead-bang winner" on direct appeal, even if she were otherwise effective and the claim required some additional investigation to develop. *Ross II*, 2012 UT 93, ¶ 45 (citation omitted). At the other end of the spectrum, appellate counsel likely could not be found ineffective for omitting a potentially meritorious claim not fully developed in the record if she already had a host of strong claims based on the record alone.

2. Appellate Counsel's Decision to Make or Forego a Rule 23B
   Motion Is Merely One Factor in the *Strickland* Analysis

¶71    The *Strickland* standard similarly encompasses the issue of when appellate counsel should utilize rule 23B to remand a case for additional fact-finding necessary to support an ineffectiveness claim. Prior to 1992, appellants seeking to raise ineffectiveness claims frequently faced the "inadequate record dilemma." *State v. Litherland*, 2000 UT 76, ¶ 14, 12 P.3d 92. The dilemma was that, while appellants have the "obligation to provide supporting arguments by citation to the record," trial "counsel's ineffectiveness may have caused, exacerbated, or contributed to the record deficiencies, thus presenting the defendant with a catch–22 unique to claims of ineffectiveness of trial counsel." *Id.* ¶¶ 11–12. So, prior to rule 23B's adoption, the general rule was that "a claim of ineffectiveness of trial counsel cannot be raised on appeal because the trial record is insufficient to allow the claim to be determined." *State v. Humphries*, 818 P.2d 1027, 1029 (Utah 1991).

¶72   Rule 23B, "specifically designed to address the inadequate record dilemma," was adopted in 1992. *Litherland*, 2000 UT 76, ¶ 14. It provides, in relevant part:

> A party to an appeal in a criminal case may move the court to remand the case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel. The motion will be available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective.

UTAH R. APP. P. 23B(a). With "a ready procedural mechanism . . . grafted into the appeals process," the *Litherland* court held that "where, on direct appeal, defendant raises a claim that trial counsel was ineffective (and assuming defendant is represented by different counsel than at trial), defendant bears the burden of assuring the record is adequate." 2000 UT 76, ¶¶ 14, 16. The court further explained: "Hence, ineffectiveness claims may be treated in the same manner as other issues on direct appeal. Appellants bear the burden of proof with respect to their appeals, including the burdens attending the preservation and presentation of the record." *Id.* ¶ 17.

¶73   Below, the district court relied in part on *Litherland*'s interpretation of rule 23B to hold that "appellate counsel's [sic] performed deficiently by failing to investigate [the medical records] claim in a Rule 23(b) [sic] motion." The court of appeals similarly cited *Litherland* in stating that "because McCloud technically 'could have' raised these claims on appeal by moving to supplement the record under rule 23B, our precedent dictates that they should be barred." *McCloud*, 2019 UT App 35, ¶ 50.

¶74   Yet *Litherland*'s interpretation of a defendant's burden to make a rule 23B motion on appeal does not address the specific issue at bar. In *Litherland*, the defendant claimed his trial counsel was ineffective for failing to remove two potential jurors during voir dire. *See* 2000 UT 76, ¶¶ 3–7. However, he implied that the evidence of his counsel's rationale, or lack thereof, for not challenging the potential jurors was inadequately represented by the record. *See id.* ¶¶ 6, 9–10, 18. The key point is that the defendant in *Litherland* did in fact assert the ineffectiveness claim. Thus, *Litherland* stands for the proposition that a defendant cannot: assert an ineffectiveness claim, fail to make a 23B motion to supplement the record relative to that claim, and subsequently complain of an

inadequate record. But this says nothing about when a defendant or his appellate counsel reasonably neglects, due to an inadequate record, to assert an ineffectiveness claim in the first place.

¶75 We reject any suggestion that appellate counsel has a duty to make a 23B motion relative to *any* ineffectiveness claim that conceivably could be raised on appeal if a reasonable attorney would not raise such a claim. Such an obligation would place an undue burden on appellate counsel to operate outside prevailing professional norms by conducting excessive factual research. It would also oppose the plain language of the rule, which provides that a party "*may* move the court" for a temporary remand for additional fact-finding "upon a nonspeculative allegation of facts." (Emphasis added). Nothing about this language indicates a mandate to employ the rule. To the contrary, this court has explained that a rule 23B motion should be granted only in specific circumstances—not for a "fishing expedition." *State v. Griffin*, 2015 UT 18, ¶ 19, 441 P.3d 1166 (citing *State v. Hopkins*, 1999 UT 98, ¶ 13 n.1, 989 P.2d 1065); *see also id.* ("The mere hope that an individual may be able to provide information if subpoenaed to testify is not sufficient. An affiant must submit specific facts and details that relate to specific relevant occurrences" when moving for a remand under rule 23B.); *Ross v. State (Ross III)*, 2019 UT 48, ¶ 59 n.6, 448 P.3d 1203 (explaining that rule 23B "has a narrow and specific purpose—to *permit* a party to address record deficiencies that exist as a result of ineffective assistance of counsel" (emphasis added)).

¶76 Today we clarify that the *Strickland* standard encompasses any obligation an appellate attorney may have to make a rule 23B motion. Specifically, an analysis of any such obligation's existence requires two steps. First, counsel must be aware of "a nonspeculative allegation of facts, not fully appearing in the record" that could support on appeal an ineffectiveness claim. Second, counsel will have an obligation to make the motion, supplement the record with those facts, and raise the claim on appeal only if it would be objectively unreasonable to not do so. Accordingly, we stress that when a court reviews an appellate ineffectiveness claim in a case such as the present one, the relevant inquiry is whether counsel's performance, including a decision to not move under Rule 23B, was unreasonable under prevailing professional norms.

## II. APPELLATE COUNSEL WAS NOT INEFFECTIVE BECAUSE TRIAL COUNSEL WAS NOT INEFFECTIVE

¶77 Having clarified appellate counsel's duty to conduct any extra-record investigation and raise certain claims on appeal, we

now turn to McCloud's specific claims. At bottom, he claims that Trial Counsel was ineffective for refusing to consult experts and failing to obtain Victim's medical records. McCloud would prefer to not reach those claims through the gateway of an appellate ineffectiveness claim. We cannot indulge his preference; the PCRA bars his direct claims. But in the end, it matters not because Trial Counsel was not ineffective.

¶78   We begin with the PCRA. It provides that "a person who has been convicted and sentenced for a criminal offense may file an action . . . for post-conviction relief to vacate or modify the conviction or sentence" upon certain enumerated grounds. UTAH CODE § 78B-9-104(1). One of these grounds is that "the petitioner had ineffective assistance of counsel in violation of the United States Constitution or Utah Constitution." *Id.* § 78B-9-104(1)(d). However, "[a] person is not eligible for relief under this chapter upon any ground that: . . . could have been but was not raised at trial or on appeal," *id.* § 78B-9-106(1)(c), unless the failure to do so "was due to ineffective assistance of counsel." *Id.* § 78B-9-106(3)(a).

¶79   That McCloud did not raise on appeal his claims against Trial Counsel is undisputed. So, we consider whether his claims "could have been raised" on appeal. "Our cases establish that a defendant 'could have' raised a claim when he or his counsel is aware of the essential factual basis for asserting it." *Pinder v. State*, 2015 UT 56, ¶ 44, 367 P.3d 968.[11] Below, the court of appeals determined that McCloud "could have" raised his ineffectiveness claims on appeal because, at the time, "[b]oth McCloud and Appellate Counsel were aware of these potential claims and the essential factual basis for asserting them." *See McCloud v. State*, 2019 UT App 35, ¶¶ 35, 46, 440 P.3d 775. We agree; both McCloud and Appellate Counsel testified that McCloud complained of these issues to Appellate Counsel prior to the direct appeal.

---

[11] We note here that *Pinder* and the cases it cites for its "essential factual basis" test were analyzing claims not raised at trial or on post-conviction petition. *See Pinder v. State*, 2015 UT 56, ¶¶ 44–45; *Taylor v. State*, 2012 UT 5, ¶¶ 19–22, 270 P.3d 471; *Gardner v. State*, 2010 UT 46, ¶ 76, 234 P.3d 1115; *Gardner v. Galetka*, 2004 UT 42, ¶ 13, 94 P.3d 263. We do not foreclose the possibility that, in a future case, we may conclude that the "essential factual basis" test is unworkable as applied to a direct appeal, given the reasonable expectations of appellate counsel to perform extra-record investigation. *See supra* ¶ 68. But we need not decide this issue today.

¶80　But that is not the end of it. McCloud may nevertheless assert his underlying claims if he can show that the failure to raise them on direct appeal "was due to ineffective assistance of counsel." To prove ineffective assistance of counsel, a defendant must show that (1) counsel performed deficiently, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶81　The procedural posture of this case makes evaluation of the deficient performance prong difficult. Because the court of appeals applied the "unusual circumstances" exception to directly address the claims of Trial Counsel's ineffectiveness, McCloud has briefed the underlying claims on the merits but not the issue of Appellate Counsel's performance in omitting those claims. Further, Appellate Counsel relied on this court's "obvious from the trial record" "test", *see supra* part I(A), in both deciding which claims to raise on appeal and informing McCloud that he could raise additional ineffectiveness claims in a post-conviction petition. It would be difficult, and perhaps unfair, to judge Appellate Counsel's performance based on an unclear explication of the law.

¶82　Fortunately, we need not evaluate Appellate Counsel's performance because any deficient performance could not have prejudiced McCloud. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ."). To show prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilder*, 2018 UT 17, ¶ 17, 420 P.3d 1064 (quoting *Archuleta v. Galetka*, 2011 UT 73, ¶ 40, 267 P.3d 232). Because Trial Counsel was not ineffective, McCloud's fate would be no different had Appellate Counsel raised on direct appeal the issues of which he now complains.

¶83　We agree with the court of appeals' analysis of Trial Counsel's effectiveness. First, we show that Trial Counsel did not perform deficiently by refusing to consult with or use experts; he made a reasonable strategic decision based on the circumstances of the case and his theory of defense. Second, we show that Trial Counsel's failure to obtain all of Victim's medical records did not prejudice McCloud; the records would have produced a single piece of evidence that was cumulative at best and incriminating at worst.

*A. Trial Counsel Did Not Perform Deficiently by Refusing to Consult or Use Experts*

¶84 Proving deficient performance under *Strickland* is no easy task. "To establish that counsel was deficient, a petitioner must overcome the strong presumption that counsel rendered constitutionally sufficient assistance by showing that counsel's conduct 'fell below an objective standard of reasonableness' under prevailing professional norms." *Lafferty v. State*, 2007 UT 73, ¶ 12, 175 P.3d 530 (citing *Strickland,* 466 U.S. at 688–90). As discussed above, the United States Supreme Court has consistently refused to add specificity to the *Strickland* test. *Supra* ¶ 66. Instead, the reasonableness of counsel's performance is to be evaluated on a case-by-case basis, considering all the circumstances. *Supra* ¶¶ 66, 69.

¶85 McCloud argues that Trial Counsel was ineffective because Trial Counsel refused to consult experts when preparing the defense or to call at trial any experts. Prior to trial, the McClouds independently researched "parental alienation syndrome" and believed the defense should utilize "experts in cases involving child witnesses and false memories" and obtain McCloud's psychological profile. Still, Trial Counsel refused to consult or call at trial any experts. McCloud's argument now boils down to the assertion that there was "absolutely no risk to hiring experts . . . and there were numerous reasons to [at least] consult them."

¶86 But "nothing to lose" is not the standard of competent advocacy. *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (explaining that the United States Supreme Court "has never established anything akin to the . . . 'nothing to lose' standard for evaluating *Strickland* claims"). As the court of appeals aptly explained, trial counsel is obligated to conduct "adequate investigation of 'the underlying facts of the case'" in order to "set[] the foundation for counsel's strategic decisions about how to build the best defense." *McCloud v. State*, 2019 UT App 35, ¶¶ 56, 57, 440 P.3d 775 (quoting *State v. Hales*, 2007 UT 14, ¶ 69, 152 P.3d 321). The specific facts revealed by an adequate investigation "may require trial counsel to investigate potential [expert] witnesses" or "may reveal that 'expert evidence is critical'" to the case, requiring counsel to utilize experts to adequately represent the client. *Id.* ¶ 57 (alteration in original) (citations omitted). In other words, after adequate investigation, counsel may reasonably decide not to consult or call experts if "reasonable professional judgments support limitations on investigation." *Id.* ¶ 58 (citation omitted).

This is a far cry from McCloud's claim that "trial counsel have a fundamental duty to . . . hir[e] expert assistance."[12]

¶87   It seems that McCloud and Trial Counsel simply had a difference of opinion regarding their theory of the defense. McCloud thought they should craft a "scientific" defense based on "parental alienation syndrome" and employing child memory and psychosexual experts. Trial Counsel disagreed; the case should not be a "battle of experts." He considered it more of a "he-said/she-said" case and believed there was "compelling evidence to discredit the she-said aspect." Trial Counsel also testified: "I make it very clear that when I take a case, I'm the lawyer who calls the shots . . . . And if my clients are not satisfied with that, they are more than welcome to hire other counsel who will do it the way they want it done."

¶88   To effectuate his trial strategy, Trial Counsel presented evidence of McCloud's calendars and notes as well as a "video taken at Christmas" showing that McCloud and Victim were not together on certain days of alleged abuse. *McCloud*, 2019 UT App 35, ¶ 70. He also "effectively cross-examined" Victim at trial, "highlighting inconsistencies in her testimony," eliciting "testimony of 'deteriorated' relationships between McCloud and Victim and McCloud and Victim's mother," and suggested that Victim was trying to "get back at her father." *Id.* ¶ 71. Although the amassed evidence did not create a complete alibi, Trial Counsel hoped "that if several of [Victim's] representations (as to dates) were proved to be false, the rest would be called into question." *Id.* ¶ 70 (alteration in original). Ultimately, the strategy was not a total failure—the

---

[12] For this proposition, McCloud cites three cases; he overstates the holding of each. In *State v. J.A.L.*, we found that counsel performed deficiently because counsel essentially conducted *no* investigation. 2011 UT 27, ¶¶ 7–12, 29, 35–36, 262 P.3d 1. There, counsel failed to analyze or hire experts to rebut a key piece of physical evidence (a "Code R kit" used to collect and analyze evidence of an alleged rape) and called at trial only a single witness, the defendant. *Id.* In *Hales*, defense counsel was similarly found deficient for failing to utilize a competent expert to rebut the State's interpretation of a key piece of physical evidence (a CT scan). 2007 UT 14, ¶¶ 28–29, 69. And in *Taylor v. State (Taylor II)*, counsel was deficient for failing to investigate and hire experts in part because of "his lack of knowledge of mitigation experts and his belief that all experts were 'hired guns' and that it was unethical to use them." 2007 UT 12, ¶ 55, 156 P.3d 739.

jury convicted McCloud on four counts but acquitted him on the remaining three.

¶89 In all, we agree with the court of appeals that Trial Counsel adequately investigated McCloud's case and made a reasonable strategic decision to not consult or call experts.

> Trial Counsel had practiced criminal law for twenty-five to thirty years. In that time, he had used psychosexual profile experts and false memory experts and sometimes had consulted them before trial without calling them at trial. Trial Counsel testified that "multiple factors" go into his decision to consult or retain experts, including "[i]nvestigation, the specific facts, the defense you're running, the type of case," and "what you believe is going to be necessary" to prevail.

*Id.* ¶ 63 (alteration in original). "Indeed, a review of Trial Counsel's strategy and 'overall performance indicates active and capable advocacy,'" *id.* ¶ 70 (quoting *Harrington v. Richter*, 562 U.S. 86, 111 (2011)), under prevailing professional norms of pre-trial investigation and strategic decision-making. As such, Trial Counsel did not perform deficiently under the circumstances in refusing to consult or call at trial experts.

### B. Trial Counsel's Failure to Obtain All of Victim's Medical Records Did Not Prejudice the Outcome

¶90 "To show prejudice in the ineffective assistance of counsel context, the defendant bears the burden of proving . . . that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082 (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citation omitted).

¶91 McCloud claims that Trial Counsel was ineffective for failing to obtain all of Victim's medical records. Prior to trial, the State provided Trial Counsel with some of Victim's medical and mental health records. Trial Counsel incorrectly "believed we had all of the records" and did not seek to subpoena any further records. Had Trial Counsel subpoenaed the records, the request would have yielded a single record: the discharge summary of a meeting between Victim and a doctor three weeks prior to Victim's first claims to law enforcement of the alleged abuse. McCloud highlights in his brief that the discharge summary states Victim told the doctor that she "d[id] not recall [McCloud] being sexually

inappropriate" other than showering and sleeping in the same bed with her.

¶92  However, McCloud glosses over the rest of the discharge summary. He acknowledges that the report "indicated that there may have been some sexual abuse," when the victim was young—a euphemistic way of summarizing that "[Victim] has been having flashbacks and nightmares about previous sexual abuse by her biological father." And although McCloud "never denied that he had washed his daughter in the shower when she was young," he neglects to mention that the discharge summary continues: "[McCloud] also insisted on sleeping with [Victim]. . . . and it is unclear whether this was actually a case of molestation or a father with extreme boundary problems."

¶93  The discharge summary does not "undermine [our] confidence in the outcome." At best, the record is a double-edged sword; at worst, it cuts deeply against McCloud. "Indeed, the document seems to be affirmative evidence of abuse. And, if presented at trial, it could have been harmful to McCloud." *McCloud*, 2019 UT App 35, ¶ 76.

¶94 McCloud also argues that the discharge summary undermines Victim's credibility because Victim reported to police three weeks later that she had told a counselor, while hospitalized the previous month, that her father had performed oral sex on her. To the extent that this argument has any significant exculpatory value, the evidence that McCloud could have presented had he obtained the record would have been cumulative of what was already presented to the jury. *See State v. Griffin*, 2015 UT 18, ¶ 52, 441 P.3d 1166 (finding that additional evidence identifying a certain suspect would have been cumulative because the "primary eyewitness in the case" had already picked that suspect out of a photo lineup); *State v. King*, 2012 UT App 203, ¶ 34, 283 P.3d 980 (determining counsel's failure to seek discovery of mental health records was not prejudicial when the "information [was] merely cumulative of the evidence presented to the jury"). On cross-examination, Trial Counsel elicited testimony from Victim that she had not told anyone "all of the details" until "September or October of 2000" and, prior to that time, she "had been seeing a therapist that knew a little bit more about the touching and stuff like that, but as for the oral stuff, nobody knew." Thus, Victim's own testimony at trial contradicted what she initially told the police about her disclosure to hospital staff. And this is the same discreditation of Victim that McCloud now claims he was unable to accomplish without the medical record.

¶95 We find that the medical record in question was at best cumulative of evidence already presented, if not incriminating on the whole. As such, McCloud has not carried his burden of showing a "reasonable probability that, but for counsel's [failure to obtain the record], the result of the proceeding would have been different."

¶96 Because Trial Counsel did not perform deficiently in refusing to consult or call at trial experts and his failure to obtain all of Victim's medical records did not prejudice the outcome, Trial Counsel was not ineffective. Therefore, McCloud's claims fail regardless of Appellate Counsel's performance.

## CONCLUSION

¶97 Today we clarify that the only measure of appellate counsel's obligation to raise certain claims on appeal is reasonableness under the *Strickland* standard. Specifically, appellate counsel will be found deficient for omitting a claim if a reasonable attorney, acting according to prevailing professional norms and in light of the circumstances, would have asserted that claim. The apparentness of the claim from the record, the amount of extra-record investigation necessary to develop the claim, and the usage or non-usage of a rule 23B motion are all factors that may influence the reasonableness analysis, but none of these factors stand alone as dispositive.

¶98 Turning to McCloud's specific claims, we find the PCRA bars his direct claims against Trial Counsel. So, we view his claims through the lens of an appellate ineffectiveness claim and find that any alleged deficient performance could not have prejudiced McCloud. We affirm the court of appeals' decision because Trial Counsel did not perform deficiently by refusing to utilize experts and Trial Counsel's failure to subpoena all of Victim's medical records did not prejudice McCloud.